# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HARTMAN, AMY GOODRIDGE, and CHASE DAVIS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREAT BASIN SCIENTIFIC, INC.; DAVID SPAFFORD, an individual; RYAN ASHTON, an individual; JEFFREY RONA, an individual; SANDRA NIELSEN, an individual; KIRK CALHOUN, an individual; RONALD LABRUM, an individual; SAM CHAWLA, an individual, <br><br> Defendants. | No. 2:17-cv-01067-ELF <br><br> COLLECTIVE/CLASS ACTION <br><br> JURY TRIAL DEMANDED |

## COLLECTIVE/CLASS ACTION COMPLAINT

### SUMMARY

Plaintiffs Elizabeth Hartman, Chase Davis, and Amy Goodridge, (collectively "Plaintiffs") individually and on behalf of all other similarly situated employees ("Claimants" or "GBS employees"), bring this action as a collective action against Plaintiffs' former employer Great Basin Scientific, Inc. ("GBS" or "Company" ), and GBS's officers and directors individually named in this Complaint, ("the Officers and Directors") (GBS and the Officers and Directors are collectively referred to herein as "Defendants") pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and as a state-wide class action under Fed. R. Civ. P. 23(b)(3) for violations of Utah's Payment of Wages Act, Utah Code Ann.

1

§§ 34-28-1 *et seq*., and Utah common law to recover unpaid wages, salaries, commissions, minimum wages, overtime wages, paid time off, employee benefits, liquidated damages, interest, attorneys' fees and costs.

For a period of 6 months in 2017, GBS repeatedly and illegally delayed making payroll and failed to fund payroll for the Plaintiffs, and the Claimants, nearly 100 salaried and commissioned employees, and 50 hourly GBS employees. GBS failed to compensate Plaintiffs and Claimants for months of work and failed to make payroll for over 5 payroll periods amounting to at least $4 million in unpaid salaries, wages, sales representative commissions, overtime, minimum wage, benefits and PTO that are owed to GBS's workforce. Plaintiffs and Claimants worked for months for the benefit of GBS wholly and without compensation relying on negligent promises made by GBS and the Officers and Directors, all in violation of the FLSA, Utah's Payment of Wages Act, and Utah common law, among other violations.

The Plaintiffs also bring this action on their own behalf, and on behalf of other similarly situated former employees who worked for GBS and who were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered by Defendant on or about August 9, 2017, and within thirty (30) days of that date, and who were not provided 60 days advance written notice of their terminations by Defendant, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq*. Plaintiffs and all similarly situated employees seek to recover 60 days wages benefits, pursuant to 29 U.S.C. § 2104 from GBS.

2

## JURISDICTION & VENUE

1.      This Court has federal question jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' and Claimants' claims under the Utah Payment of Wages Act, Utah Code Ann. §§ 34-28-1 *et seq*, and Utah common law.

2.      Venue is proper under 28 U.S.C. § 1391 since a substantial part of the events giving rise to this claim occurred in this District and Division.

## THE PARTIES

3.      Plaintiff Elizabeth Hartman ("Hartman") is a resident of Salt Lake City, Utah and worked as a salaried employee in the public and investor relations department of GBS from August 2016 until she was terminated on August 31, 2017.   Hartman did not receive at least $455.00 per week in salary from March 2017 to August 31, 2017 and was therefore misclassified as an exempt employee under the FLSA and is entitled to at least minimum wage for all hours worked during that time period, overtime at her regular rate of pay for any hours worked over 40 in a single workweek, liquidated damages equivalent for the unpaid wages, and attorney's fees. Hartman is also entitled to payment of all earned and unpaid wages under the Utah Payment of Wages Act, as well as other common law claims enumerated below.   Hartman is similarly situated to the Claimants in that the salaried Claimants all failed to receive $455.00 per week during the relevant time period in violation of the FLSA, and failed to receive at least minimum wage for all hours worked and overtime wages at for hours worked in excess of 40 in a single workweek.   Like Hartman, the Claimants also failed to receive their compensation for work performed during the relevant time period in violation of Utah law.   Hartman's Notice of Consent is attached hereto as Exhibit 1.

3

4.     Plaintiff Chase Davis ("Davis") is a resident of Salt Lake City, Utah and worked for GBS as an hourly employee with the title of Assembly Technician and Kitting Station Lead from approximately May 15, 2015 to August 31, 2017.  GBS failed to compensate Davis at least minimum wage for all hours worked, and overtime for hours worked in excess of 40 in a single workweek, from March 2017 to August 31, 2017, all in violation of the FLSA.  Davis is entitled to damages for all hours under the FLSA and is entitled to at least minimum wage for all hours worked during that time period, overtime at his regular rate of pay for any hours worked over 40 in a single workweek, liquidated damages equivalent for the unpaid wages, and attorney's fees. Like Davis, the hourly Claimants are also entitled to payment of all earned and unpaid wages under the Utah Payment of Wages Act, as well as other common law claims enumerated below. Davis is similarly situated to the hourly Claimants in that all hourly Claimants failed to receive at least minimum wage for all hours worked during the relevant time period, and failed to receive overtime compensation for all hours worked in excess of 40 hours in a single workweek, in violation of the FLSA.  Like Davis, the hourly Claimants also failed to receive their compensation for work performed during the relevant time period in violation of Utah law. Davis' Notice of Consent is attached hereto as Exhibit 2.

5.     Plaintiff Amy Goodridge ("Goodridge") is a resident of Michigan and worked for GBS as a commissioned outside sales representative from approximately April 28, 2014 to August 31, 2017.  GBS failed to compensate Goodridge for earned sales commissions and salary in violation of the Utah Wage Payment Act, and other state law claims during the relevant time period.  Goodridge's Notice of Consent is attached hereto as Exhibit 3.

6.     Claimants are similarly situated to the Plaintiffs and consist of approximately 100 salaried and commissioned former employees and approximately 50 hourly former employees

4

that are residents and employees of the state of Utah.  Like Plaintiffs, Claimants were victims of

GBS's repeated payroll delays and missed payrolls from March 2017 to August 31, 2017, as

more fully stated herein.

      7.     Great Basin Scientific, Inc. ("GBS") was founded in 2005, and is headquartered at

420 East South Temple, Suite 520, Salt Lake City, Utah 84111. GBS is a publicly traded

company and trades under the symbol GBSN.  GBS is a molecular diagnostic testing company.

The Company develops and commercializes molecular diagnostic medical devices that are

designed to test for infectious diseases, especially hospital-acquired infections.  At all relevant

times GBS was an "employer" as defined under the FLSA and the Utah Payment of Wages Act.

      8.     Until on or about August 9, 2017, the Plaintiffs and Claimants were employed by

GBS at or reported to its Salt Lake City, Utah location and/or its West Valley City, Utah

location.

      9.     Ryan Ashton ("Ashton") is a resident of Salt Lake City, Utah and is co-founder,

Chief Executive Officer and Board Member of GBS and has served in that capacity from 2005 to

present.  At all relevant times Ashton was an "employer" as defined under the FLSA and the

Utah Payment of Wages Act.  Ashton was actively involved in and exercised the authority to not

pay GBS employees for all hours worked and incurring approximately $4 million in liabilities for

unpaid compensation.  Ashton exercised control over hiring and firing, the setting, payment,

reduction and non-payment of compensation, wages, commissions, benefits and had control over

the management decisions effecting the workforce.

      10.    Jeffrey Rona ("Rona") is the Chief Financial Officer, regularly conducts business

in Salt Lake City, Utah and has worked as the CFO for GBS from July 2014 to present.  At all

relevant times Rona was an "employer" as defined under the FLSA and the Utah Payment of

5

Wages Act. Rona was actively involved in and exercised the authority to not pay GBS employees for all hours worked and incurring approximately $4 million in liabilities for unpaid compensation. Rona exercised influence and control over the payment and non-payment of wages, salaries, and commissions, the amount of compensation paid to employees, allocation of GBS revenue to resources other than and in lieu of the payment of GBS employees' salaries, compensation, wages, commissions and benefits. Rona had influence over GBS's workforce, including decisions that effected hiring and firing, and the setting, payment, reduction and non-payment of compensation, wages, commissions and benefits.

11.     Sandra Nielsen ("Nielsen") is a resident of Salt Lake City, Utah and is the Senior Vice President of Sales, Marketing, and Human Resources for GBS and has worked in that capacity from 2010 to the present. At all relevant times Nielsen was an "employer" as defined under the FLSA and the Utah Payment of Wages Act. Nielsen was actively engaged in the day to day management of the GBS workforce, including setting salaries, hourly rates and employee compensation. Nielsen was actively involved in and exercised the authority to not pay GBS employees for all hours worked and incurring approximately $4 million in liabilities for unpaid compensation. Nielsen exercised control over hiring and firing, the setting, payment, reduction and non-payment of compensation, wages, commissions, benefits and had control over the management decisions effecting the workforce.

12.     David Spafford ("Spafford") is a Director and the Executive Chairman of the Board of Directors for GBS, is a founding investor of GBS, and is a resident of Laguna Beach, California. Spafford has deep experience in sales and marketing and operating experience and has intimate knowledge of GBS's business as a founder, investor and Chairman of the Board of Directors since its inception. At all relevant times Spafford was an "employer" as defined under

6

the FLSA and the Utah Payment of Wages Act.  Spafford is GBS's largest owner, either individually or through entities he controls or with which he is affiliated, is a founder of GBS, and at all relevant times was actively engaged in advising GBS's operations, including advising on decisions impacting payment of GBS employees' compensation, and negligently advising GBS to misrepresent to employees to continue working without pay.  Spafford exercised influence and control over the payment and non-payment of wages and commissions, the amount of compensation paid to employees, allocation of GBS revenue to resources other than and in lieu of the payment of GBS employees' salaries, compensation, wages, commissions and benefits.  Spafford had influence over GBS's workforce, including decisions that effected hiring and firing, and the setting, payment, reduction and non-payment of compensation, wages, commissions, and benefits.

13.    Kirk Calhoun ("Calhoun") is an active member of the GBS's Board of Directors and works in the capacity of Finance Chair, and is a resident of Palm Desert, California.  Calhoun is a Certified Public Accountant with a background in auditing and accounting.  Calhoun has experience and skills in finance, management, and corporate governance.  Among other things, Calhoun served on GBS's Audit Committee, Compensation Committee, Nominating and Governance Committee, and is an audit committee financial expert as defined by the rules of the Securities and Exchange Commission.  At all relevant times Calhoun was an "employer" as defined under the FLSA and the Utah Payment of Wages Act.  Upon information and belief, Calhoun was actively engaged in advising GBS's operations, including advising on decisions impacting payment of GBS employees' compensation, whether and under what conditions employees could continue to work, and negligently advising GBS to represent to GBS employees to work without pay.

7

14.     Ronald Labrum ("Labrum") is an active member of GBS's Board of Directors and is a resident of Chicago, Illinois. Labrum has significant experience as a corporate executive, management, and operating experience. Among other things, Labrum served on GBS's Audit Committee, Compensation Committee, Nominating and Governance Committee, and is an audit committee financial expert as defined by the rules of the Securities and Exchange Commission. At all relevant times Labrum was an "employer" as defined under the FLSA and the Utah Payment of Wages Act. Upon information and belief, Labrum was actively engaged in advising GBS's operations, including advising on decisions impacting payment of GBS employees' compensation, whether and under what conditions employees could continue to work, and negligently advising GBS to represent to GBS employees to work without pay.

15.     Sam Chawla ("Chawla") is an active member of GBS's Board of Directors and is a resident of New York, New York. Chawla has significant investment banking, mergers and acquisitions, financing and advisory expertise focusing on the healthcare sector. Among other things, Chawla served on GBS's Audit Committee, Compensation Committee, Nominating and Governance Committee, and is an audit committee financial expert as defined by the rules of the Securities and Exchange Commission. At all relevant times Chawla was an "employer" as defined under the FLSA and the Utah Payment of Wages Act. Upon information and belief, Chawla was actively engaged in advising GBS's operations, including advising on decisions impacting payment of GBS employees' compensation, whether and under what conditions employees could continue to work, and negligently advising GBS to represent to GBS employees to work without pay.

16.     Ashton, Rona, Nielsen, Spafford, Calhoun, Labrum, and Chawla are collectively referred to herein as "Officers and Directors."

8

{01227427-1 }

## FACTS

### GBS Illegally Misses and Delays Payroll for 200 Employees

17.     On or about February 10, 2017, GBS and the Officers and Directors initiated a companywide reduction in force as a result of negligent business decisions made by GBS and GBS's Officers and Directors that caused GBS to have insufficient cash flow to pay creditors and make payroll for all of its employees.

18.     The February 10, 2017 reduction in GBS's workforce impacted approximately 50 employees in accounting, human resources, manufacturing, sales, quality control, marketing, customer support, and research and development.

19.     GBS's employees are on a bi-monthly pay cycle with pay checks issued on the (a) 5th of each month for all hours worked from the 16th until the end of the month, and (b) 20th of each month for all hours worked from the beginning of the month to the 15th.

20.     GBS and the Officers and Directors continued to make negligent business decisions that resulted in insufficient cash flow to meet GBS's financial obligations to creditors, and that negligently placed GBS in a position to frequently be delinquent on the employees' scheduled payroll in violation of the FLSA and the Utah Payment of Wages Act.

21.     From March 2017 to May 15, 2017, GBS regularly missed its bi-monthly payroll and was delinquent each pay period by between 16 and 48 days, depending on the pay period. These are missed pay checks that GBS knew its employees were relying on to support families, debt obligations, and general living expenses.

22.     GBS, at the direction, authority and knowledge of the Officers and Directors, missed and were delinquent on the following payrolls that impacted the wages, salary and commissions of GBS employees:

9

a.  March 15, 2017 pay period for work performed by GBS employees from March 2, 2017 to March 15, 2017 was not paid until April 11, 2017, instead of March 20, 2017, or 22 days delinquent.

b.  March 31, 2017 pay period for work performed by GBS employees from March 16, 2017 to March 31, 2017 was not paid until April 21, 2017, instead of April 5, 2017, or 16 days delinquent.

c.  April 15, 2017 pay period for work performed by GBS employees from April 1, 2017 to April 15, 2017 was not paid until May 17, 2017, instead of April 20, 2017, or 28 days delinquent.

d.  April 30, 2017 pay period for work performed by GBS employees from April 16 to April 30, was paid on June 22, 2017, instead of May 5, 2017, or 48 days delinquent.

e.  May 15, 2017 pay period for work performed by GBS employees from May 1, 2017 to May 15, 2017 was paid on June 23, 2017, instead of May 19, 2017, or 34 days delinquent.

23.     To induce GBS employees to continue working through missed payrolls for the benefit of the Company, GBS and the Officers and Directors, engaged in a pattern of negligent misrepresentations, negligently stating and promising that GBS was close to obtaining financing or be acquired that would solve the financial and payroll delinquencies and make the employees' whole.

24.     The employees were led to believe that their only hope in getting paid for prior work was to continue to work for free.

10

{01227427-1 }

25.     For example, on April 6, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, emailed to GBS employees that: "We are getting very close to having things wrapped up so that we can get the funds we need to make one of the two payrolls we are behind. I remain hopeful that we will be able to wrap this up and funds will be released tomorrow."

26.     On April 12, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, responded to employees' requests regarding missed payrolls in an email and stated: "Some of you have asked me about payroll on April 20th. Our proposed plan includes a release of funds to make catch up our payroll and make other urgent payments."

27.     On or about April 13, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to GBS employees that "this new go-forward plan eliminates all of our outstanding debt and puts us on a path to relist our stock on Nasdaq later this year . . . When will we get caught up on payroll? I wish I had a better answer but I don't know just yet. I will know more by Monday morning and will update you at that time."

28.     On May 16, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to GBS employees that "some people have asked about our confidence in closing the equity deal. The good news is that the equity offering will be funded by the same hedge funds that provided the bridge funding – they provided the bridge solely so they could participate in the equity offering. I am therefore very confident the equity offering will happen. We're now focused on timing."

{01227427-1 }

29.     On May 30, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to GBS employees that "we now believe the equity offering will close sometime the week of June 12th… we are not concerned with getting this transaction done…On a more positive note, we continue to make very good progress on the long-term funding strategy I mentioned in my email on May 8th…Our goal is to close that transaction within the next 7-10 weeks. And with the $15MM in the bank, as you might imagine, our world will be very, very different."

30.     The world was very different now for GBS employees and Plaintiffs who suffered missed payrolls, were asked to work for free to keep the company alive on the negligent representations that a turnaround was just around the corner.

31.     The above misrepresentations were relied on by GBS employees and Plaintiffs and caused the Claimants to continue to work through delinquent payrolls.

32.     GBS employees and Plaintiffs suffered significant financial harm in relying on GBS, Ashton, and GBS's Officers and Directors negligent statements and reckless representations.

### GBS Employees are Induced to Work for Free
### for the Benefit of GBS and the Officers and Directors

33.     GBS, at the direction of Ashton, and with the authorization and knowledge of the Officers and Directors, caused the Claimants to work for free for at least 5 pay periods over the span of 4 months. As of the date of this filing, GBS has failed to pay for the hours worked and compensation, commissions, salaries and wages earned during the following pay periods:

a.   May 31, 2017 pay period has not been paid, and was due on June 5, 2017.

b.   June 15, 2017 pay period has not been paid, and was due on June 20, 2017.

12

    c.  June 30, 2017 pay period has not been paid, and was due on July 5, 2017.

    d.  July 15, 2017 pay period has not been paid, and was due on July 20, 2017.

    e.  July 31, 2017 pay period has not been paid, and was due on August 4, 2017.

    f.  August 15, 2017 pay period, which is a partial pay period covering August 1-9, has not been paid and was due on August 20.

34.    GBS terminated the Claimants on or about August 31, 2017.

35.    GBS and the Officers and Directors, including Ashton, negligently managed GBS causing millions of dollars of missed payroll, paid time off, and benefits and specifically authorized, directed and conspired with Ashton to make negligent misrepresentations to induce the employees to continue working without pay for the benefit of GBS.

36.    GBS, Ashton, and the Officers and Directors made representations to the workforce leading them to believe that GBS would make up the missed payrolls if the employees continued working without compensation and to induce the workforce to continue working for months without pay.

37.    For example, on June 12, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, paid $100.00 to Claimants as a "Thank You for Hanging in There" bonus, knowing that GBS did not have the resources to compensate and make Claimants' whole for "hanging in there."

38.    On July 14, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to Claimants in an email that: "Both the $15MM financing process and the acquisition discussions with MP are proceeding well....If we all hang in there, I continue to believe success awaits....We have hung in for a long time and in doing so each of us has made an investment in the Basin's future and our own; for that

13

investment to payoff we are going to have to hang in for a while longer yet.... Let's keep working [for free and without compensation] on building value each day as this will increase likelihood of success."

39.     On July 21, 2017, Sandra Nielsen, Senior Vice President of Sales, Marketing, and Human Resources for GBS with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to Claimants in response to a question concerning unpaid compensation: "Yes, back salaries for everyone and I assume yes on commissions since that obligation has been included in all the financials. **Ryan knows that payout is key to keeping everyone onboard and since they are buying us,** mainly, for our people, I would assume they would not try to negotiate away owed commissions."

40.     On July 24, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to Claimants that: "Sabby expressed support the Company in our call today...We have what we think is a very attractive offer for them, and while nothing is certain, I am hopeful that the discussions will go well...**keeping Great Basin operating is the only way the company remains fundable or acquirable. Let's stay with it day-to-day for a while yet,** and Jeff and I will keep doing all we can to find a path to financial stability and the opportunity to execute the plans we have for our future."

41.     On July 25, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to Claimants that: "This morning Sabby Capital told us that they are prepared to fund a bridge financing to our planned recap or sale of the Company.  We are negotiating the terms of that bridge today-tomorrow and as I get more information I will pass this on.  This is really good news. **Hang in there.**"

14

42.     On August 19, 2017, Ashton, with, upon information and belief, the authority and knowledge of the Officers and Directors, represented to Claimants: "What is the likelihood of success here? I really don't know. But just to be clear, both Hudson Bay and the banks we have spoken to are very interested. When we tell them that MP had placed a value of $50 million on Great Basin they clearly see there is value here (they smell money) and want to find a way for us to unlock that value and get the Company sold."

43.     On August 31, 2017, the Claimants were fired without cause and without any compensation that would make them whole for the months of free labor.

44.     To continue to support GBS's research, development, manufacturing and selling of its products, GBS employed a workforce of approximately 50 hourly employees and 100 salaried and commissioned employees without pay or compensation from approximately May 15, 2017 to August 31, 2017.

45.     At all relevant times GBS, and the Officers and Directors, acted willfully, or in reckless disregard of the state and federal wage and hour laws by missing payrolls and failing to pay employees for multiple pay periods for all hours worked.

## COLLECTIVE ACTION AND CLASS ACTION ALLEGATIONS

46.     Plaintiffs hereby incorporate each and every allegation of the proceeding paragraphs as though fully set forth herein.

47.     Plaintiffs bring this action individually and as collective and class actions on behalf of Claimants, including the following proposed classes:

48.     **FLSA CLASS**: All persons who are, or have been, employed by GBS as hourly, salaried or commissioned employees within the applicable statutory period, and who, by means

15

of the practices set forth above, failed to receive at least minimum wage for all hours worked and/or overtime compensation for hours worked in excess of 40 hours in a single work week.

49.    **Utah State Law Class:** All persons who are or have been employed by GBS under the laws of Utah as hourly, salaried or commissioned employees within the applicable statutory period, and who, by means of the practices set forth above, failed to receive all wages due and owing, including paid time off and benefits for all hours worked.

### *Collective Action Allegations: FLSA Claim*

50.    Plaintiffs seek certification on behalf of all Claimants of a collective action and the facilitation of notice to similarly-situated employees. 29 U.S.C. § 216(b).

51.    The FLSA requires employees to receive minimum wage and overtime compensation for workweeks at the regular payday for the period in which the workweek ends. 29 C.F.R. § 790.21(b).  Minimum wage and overtime earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.  29 C.F.R. § 778.106.

52.    The FLSA requires employers to pay hourly employees at least minimum wage for all hours worked and one and one-half (1.5) the employee's regular rate of pay for all overtime hours worked in excess of 40 hours in a single workweek.  29 U.S.C. §§ 206 and 207.

53.    The FLSA requires employers who classify employees exempt from minimum wage and overtime under the executive, professional or administrative exemptions to meet the salary basis test and compensate employees at least $455 per week.  29 C.F.R. § 541.600(a).

54.    Defendants violated the FLSA by delaying payroll and not compensating employees at least minimum wage and where applicable overtime on regular paydays for the period in which the workweek ends.  29 C.F.R. § 790.21(b); 29 C.F.R. § 778.106.  From approximately March 2017 to May 2017, Defendants were delinquent on multiple payrolls and

16

deprived Claimants of timely compensation on regular paydays relevant to the pay period in which Claimants' worked.

55.     Defendants violated the FLSA by failing to compensate Claimants at least minimum wage and one and one half (1.5) in overtime, where applicable, for hours worked from May 2017 to approximately August 31, 2017 in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 207.  GBS required Claimants to work for free, without compensation, by repeatedly missing payrolls and not compensating Claimants at minimum wage and applicable overtime for all hours worked.

56.     Defendants violated the FLSA by misclassifying GBS salaried employees as exempt from minimum wage and overtime.  GBS's salaried employees failed to receive at least $455 per week as required by the implementing regulations of the FLSA, and specifically 29 C.F.R. § 541.600(a), for hours worked from May 2017 to approximately August 31, 2017.  GBS therefore misclassified salaried employees as exempt from overtime or minimum wage in violation of sections 213, 206, and 207 of the FLSA and GBS salaried employees are owed at least minimum wage and overtime hours worked from May 2017 to August 31, 2017.

57.     Accordingly, Claimants bring this collective action to recover unpaid minimum and overtime wages under the FLSA, as well as liquidated damages.

### *Class Action Allegations for Utah State Law Claims*

58.     The Utah state law claims, which include both statutory claims under Utah's Payment of Wages Act, Utah Code Ann. § 34-28-1, *et seq.*, negligent misrepresentation and breach of contract claims, may properly be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

17

{01227427-1 }

59.    The following Rule 23 requirements are satisfied:

60.    **Numerosity:** The total number of members of the proposed Utah state law class exceeds 150 individuals. GBS employed all Claimants subject to Utah law. The members of the class are so numerous that joinder of all members is impractical, and a class action is the only available method for the fair, equitable, and efficient adjudication of this controversy.

61.    **Commonality:** There are common questions and issues of fact and law which predominate over any issues solely affecting individual members, by means of the unlawful employment practices set forth above. Specifically, the following questions of law and fact include, but are not limited to:

a.    Whether Defendants delayed and missed payrolls and failed to compensate Claimants for hours worked and wages and commissions earned as employees of GBS;

b.    Whether Defendants negligently induced Claimants to work without pay or compensation;

c.    Whether Defendants breached their express and/or implied contracts with Claimants and members of the proposed Class by failing to pay their wages, salary and/or commissions in accordance with their express written and/or oral contract or implied agreement under the laws of the State of Utah.

62.    **Typicality:** Claimants' claims are typical of the claims belonging to members of the Class. Claimants are similarly-situated to the putative Class members, in that these claims are grounded in the allegation that Defendants failed to compensate Claimants their earned wages and commissions and were late for and missed multiple payroll from February 2017 to August 31, 2017, and caused by negligent representations, and other unlawful practices,

{01227427-1 }

Claimants to work for free and without compensation and agreed upon earned wages and commissions.

63.   **Superiority of Class Action:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in court against the corporation. Prosecution of actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

64.   **Adequacy:** Plaintiffs will fairly and adequately protect the interest of the proposed class, and represent the salaried, hourly and commissioned employees that make up the proposed class. Plaintiffs have retained experienced employment law counsel experienced in complex Utah Wage and Hour laws and the FLSA. Claimants are not subject to any individual defenses unique from those conceivably applicable to the proposed Class as a whole.

65.   **Notice to the Proposed Class:** The notice to the proposed class members will include an introduction, a short description of the lawsuit including plaintiffs' claims and defendant's response to those claims, information on how to join the lawsuit, a section informing potential class members that retaliation is not permitted if they are currently employed by Defendants, the effect of not joining the lawsuit, and contact information for the class's counsel for any questions they may have, as well as a notice that this case on a contingency fee with an explanation of what that entails and the amount to which the class's counsel is entitled if

{01227427-1 }

successful. Along with the notice, we will attach a 'Consent to Join Lawsuit' form if the potential class member desires to join the lawsuit.

## FEDERAL WARN ACT CLASS ALLEGATIONS

66.    Plaintiffs bring the claim for relief for violation of 29 U.S.C. § 2101 et seq., on their own behalf and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of GBS'S facilities and were terminated without cause on or about August 31, 2017 and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by GBS on or about August 31, 2017, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

67.    The persons in the WARN Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, it is estimated to equal or exceed 150, and the facts on which the calculation of that number can be based are presently within the sole control of GBS.

68.    On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class members is contained in the books and records of Defendant.

69.    On information and belief, the rate of pay and benefits that were being paid by Defendant to each WARN Class Member at the time of his/her termination is contained in the books and records of the Defendant.

70.    Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

a.  whether the members of the WARN Class were employees of the Defendant who worked at or reported to Defendant's facilities;

b.  whether Defendant, unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act; and

c.  whether Defendant unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act.

71.    The Plaintiffs' claim is typical of those of the WARN Class. The Plaintiffs, like other WARN Class members, worked at or reported to one of Defendant's facilities and were terminated without cause on or about August 31, 2017, due to the mass layoffs and/or plant closings ordered by Defendant.

72.    The previously alleged class allegations apply to the WARN Class and are realleged herein.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. § 201, *et. seq.* (Failure to Pay Minimum Wage) (All Defendants)

1.    Plaintiffs incorporate the preceding paragraphs by reference.

2.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

{01227427-1 }

3.      GBS is required to adhere to the minimum and overtime pay requirements of the FLSA because they are an enterprise engaged in commerce and their employees are engaged in commerce.

4.      Defendants repeatedly and with intent and knowledge failed to pay Claimants the applicable minimum hourly wage in violation of 29 U.S.C. § 206(a).  As a result of Defendants' illegal conduct, Claimants suffered a loss of wages and other damages.

5.      Claimants are entitled to damages equal to the mandated minimum wage for all pay periods delayed and missed.

6.      Defendants acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA.  Claimants are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Claimants are entitled to an award of prejudgment interest, and attorneys' fees and costs as a result of bringing this action.

7.      Each of the Officers and Directors acted with knowledge and authority and directed the non-payment of wages during the relevant time periods, actively managed the operations of the Company and specifically the compensation and wages of the Claimants.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. § 201, *et seq.* (Failure to Pay Overtime) (All Defendants)

8.      Plaintiffs incorporate the preceding paragraphs by reference.

9.      Section 207(a)(1) of the FLSA states that an employee must be paid overtime equal to at least 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 hours per week.

{01227427-1 }

10.    Defendants violated the FLSA by failing to pay Plaintiffs and Claimants overtime compensation as required by the FLSA.

11.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay requirements set forth in section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1). None of the FLSA's overtime exemptions apply to Plaintiffs or Claimants because Defendants failed to pay Claimants a guaranteed salary of at least $455.00 per week.  Claimants have suffered lost wages and other damages as a result of Defendants' illegal conduct.

12.    Defendants have not acted in good faith nor with reasonable grounds to believe that their actions and omissions were not in violation of the FLSA.  As a result thereof, Claimants are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by section 16(b) of the FLSA, 29 U.S.C. 216(b). Claimants are also entitled to an award of prejudgment interest, and reimbursement of reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE UTAH PAYMENT OF WAGES ACT, UTAH CODE ANN. 34-28-1, et seq.,  (All Defendants)

13.    Plaintiffs incorporate the preceding paragraphs by reference.

14.    GBS is an employer within the meaning of Utah Code Ann. § 34-28-2, and 29 U.S.C. § 203.

15.    Wages includes, salary, hourly pay, bonuses, commissions, benefits, paid time off and any other forms of compensation earned by employees.

16.    Defendants violated Utah's Payment of Wages Act by (1) failing to pay Claimants, including Plaintiffs, their wages within 24 hours of separation from payroll, or on the next regular payday if Claimants' resigned during the relevant time period, (2) failing to pay

23

wages earned by employees at regular intervals and later than 10 days after the close of the pay period, and (3) by withholding employees' wages for unlawful purposes during the relevant time period.

17.    Claimants are entitled to all wages earned during the relevant time period, and any and all penalties available under the Payment of Wages Act, including an amount equal to 2.5% of the unpaid wages owed to the employee for up to 20 days, up to 60 days of employees' unpaid wages, and reimbursement of costs and attorneys' fees.  Utah Code Ann. § 34-28-1, et seq.

## FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS CONTRACT (GBS)

18.    Plaintiffs incorporate the preceding paragraphs by reference.

19.    At the time of hiring, GBS expressly made an offer, orally and/or in writing to pay Claimants and members of the proposed Utah class, a specific rate of compensation for each hour of worked performed, including hourly rates of pay, base salaries, commissions, PTO, and benefits.

20.    Claimants and each member of the proposed Utah class performed work and, as consideration, provided their labor and services in acceptance of the offer made by GBS.

21.    GBS benefitted from the labor provided through the unpaid work performed by Claimants as alleged herein.

22.    A contract for wages exists or existed by the nature of the employer-employee relationship.

23.    GBS breached the contract by failing to pay the full-amount of the agreed upon wages to Claimants.

24

24.     As a result of GBS's breach of their contractual obligations, Claimants suffered damages in an amount to be proven at trial, but not less than $4 million.

25.     Claimants request the full amount of unpaid wages, plus pre and post judgment interest calculated from the date that such wages were originally due, and any other relief that this Court finds reasonable and equitable under the circumstances.

## FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT (GBS)

26.     Plaintiffs incorporate the preceding paragraphs by reference.

27.     At the time of hiring, GBS promised to pay Claimants and members of the proposed Utah class, a specific rate of compensation for each hour of worked performed, including hourly rates of pay, base salaries, commissions, PTO, and benefits.

28.     Claimants and each member of the proposed Utah class performed work and, as consideration, provided their labor and services in reliance on GBS's promise to compensate Claimants.

29.     When Claimants accepted GBS's offer of employment for payment of a specific wage for each hour worked and performed, there was an implied contract formed between GBS and Claimants for payment of a specific wage for each hour worked and performed.

30.     GBS benefitted from labor and services performed by Claimants.

31.     GBS failed to pay the agreed upon wages for all work performed.

32.     GBS breached its contractual obligation to Claimants by failing to compensate Claimants the full-amount of the agreed upon wages.

25

33. As a result of GBS's breach of their contractual obligations, Claimants suffered damages, having an implied contract, in an amount to be proven at trial, but not less than $4 million.

34. Claimants request the full amount of unpaid wages, plus pre and post judgment interest calculated from the date that such wages were originally due, and any other relief that this Court finds reasonable and equitable under the circumstances.

## SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION (All Defendants)

35. Plaintiffs incorporate the preceding paragraphs by reference.

36. Defendants made multiple erroneous and negligent misrepresentations and omissions that Claimants relied upon, including without limitation the representations alleged in paragraphs 24-28 and 36-41 above.

37. Among others, Defendants represented to Claimants that (i) past compensation and commissions will be made up if Claimants continue working and "hang in there," (ii) financing and funding will happen to keep GBS afloat and its employees paid and that it is just a matter of timing, (iii) and there is not a concern with getting a new deal or transaction done that will include repayment of back wages and commissions and that new money and funding in the bank will happen.

38. The above representations were false when made or were made with a reckless disregard for the truth or falsity of the statements.

39. Defendants failed to exercise reasonable care in determining whether the representations were true and accurate.

26

{01227427-1 }

40.     Defendants, as the employer, were better positioned than the Claimants to know if the representations were true and accurate concerning funding and financing of GBS.

41.     Defendants had a financial interest in Claimants' continued indentured servitude and free labor that benefitted Defendants.

42.     The Claimants reasonably relied upon GBS's and the Officers and Directors representations.

43.     As a proximate and direct result of Defendants' misrepresentations, Claimants have been damaged in an amount to be determined at trial but in no event less than $4,000,000.

## SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT (GBS)

44.     Plaintiffs incorporate the preceding paragraphs by reference.

45.     Claimants have conferred upon GBS over four months of employment and have not been paid for their employment efforts.

46.     GBS has expressly appreciated and acknowledged the receipt of such employment efforts conferred upon it by Claimants.

47.     Based upon the circumstances alleged herein, it would be inequitable for GBS to retain the benefit of Claimants' employment efforts without payment of its value.

48.     The value of Claimants is an amount to be determined at trial but in no event less than $4,000,000.

## EIGHTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY (Officers and Directors)

49.     Plaintiffs incorporate the preceding paragraphs by reference.

{01227427-1}

50.    The Officers and Directors initiated a fiduciary relationship with Claimants as alleged herein. Specifically, without limitation:

    a.  The Officers and Directors, invited Claimants to invest in GBS and provide provisional bridge funding to GBS by Claimants providing to GBS employment efforts without immediate payment;

    b.  The Officers and Directors invited the trust and confidence of the Claimants;

    c.  The Officers and Directors provided information to and made representations to Claimants regarding:

        i.  the financial condition of GBS,

        ii.  the ability of GBS to repay Claimants for work performed without compensation,

        iii.  the ability of GBS to continue as a going concern,

        iv.  evaluations of the prospects for repayment to Claimants for work performed but not paid,

        v.  promises to provide information and advice to Claimants regarding the advisability of continuing to work without pay, and

        vi.  the confidence of the Officers and Directors in their ability to secure repayment to Claimants of their investment of work;

    d.  The Officers and Directors expanded their relationship with Claimants beyond that of employer and employee by inviting Claimants to have trust in them and their ability to secure payment to Claimants for Claimants' continued work for GBS without pay;

{01227427-1 }

e.  The position of the Officers and Directors in relation to Claimants was superior and unequal in terms of knowledge of the facts and condition of GBS and positions held within GBS;

f.  The Officers and Directors used their superior employment positions and their exclusive access to information regarding financing, funding, and the financial condition of GBS to exercise extraordinary influence over Claimants in order to convince Claimants to repose trust in them and to continue to work for GBS without pay; and

g.  The Officers and Directors induced Claimants to relax the care and vigilance that they would normally exercise by their conduct towards Claimants identified herein.

51.  Claimants reasonably relied upon the Officers and Directors as fiduciaries and to act on their behalf.

52.  The Officers and Directors breached their fiduciary duties owed to Claimants by:

a.  Failing to disclose material information to Claimants regarding the condition of GBS, the ability of GBS to later pay Claimants if they worked without pay, and other information directly material to Claimants' continued employment and benefits;

b.  Failing to advise Claimants not to continue to work for GBS without pay;

c.  Failing to have undivided loyalty to Claimants; and

d.  Taking improper advantage of Claimants by advising and encouraging them to work without pay.

{01227427-1 }

53.     The breaches of fiduciary duty by the Officers and Directors caused Claimants to work without pay.

54.     Claimants would not have continued to work without pay if the Officers and Directors had not breached their fiduciary duties.

55.     Due to the Officers' and Directors' breaches of fiduciary duty to Claimants, Claimants have suffered harm in the amount of the work that they performed without pay or other benefits of employment in an amount not less than $4 million, emotional distress, general damages, costs, and attorney fees.

## NINTH CAUSE OF ACTION

### CIVIL CONSPIRACY (Officers and Directors)

56.     Plaintiffs incorporate the preceding paragraphs by reference.

57.     GBS combined with the Officers and Directors to obtain the employment efforts of Claimants without paying for it as alleged herein.

58.     GBS recognized that it could not continue as a going concern if it continued to employ Claimants and pay their wages and benefits.

59.     GBS, together with its Officers and Directors, conspired to obtain the benefits of Claimants' continued employment efforts without paying Claimants.

60.     There was a meeting of the minds between GBS and the Officers and Directors for the course of action which included obtaining the benefits of Claimants' continued employment efforts without paying Claimants their wages.

61.     There was a meeting of the minds between GBS and the Officers and Directors for the course of action which included GBS terminating Claimants without providing notice and fulfilling the requirements of the WARN Act.

30

{01227427-1 }

62.    It was unlawful for GBS to employ Claimants without paying Claimants their wages.

63.    It was unlawful for GBS to terminate Claimants without first providing notice and complying with the WARN Act.

64.    GBS and the Officers and Directors knew and were aware that the employment of the Claimants without paying Claimants their wages was unlawful.

65.    GBS and the Officers and Directors knew and were aware of the requirements of the WARN Act.

66.    As a result of the conspiracy between GBS and the Officers and Directors, Claimants have suffered harm in the amount of the work that they performed without pay or other benefits of employment in an amount not less than $4 million, emotional distress, general damages, costs, and attorney fees.

67.    As a result of the conspiracy between GBS and the Officers and Directors, Claimants have suffered harm by not having the advance notice of termination required by the WARN Act.

## TENTH CAUSE OF ACTION

### FEDERAL WARN ACT (GBS)

68.    Plaintiffs incorporate the preceding paragraphs by reference.

69.    At all relevant times, GBS employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

{01227427-1 }

70.     At all relevant times, GBS was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until it decided to order a mass layoff or plant closing at its facilities.

71.     At all relevant times, Plaintiffs and the other similarly situated former employees were employees of GBS as that term is defined by 29 U.S.C. §2101.

72.     On or about February 11, 2013, the GBS ordered mass layoffs or plant closings at its facilities, as that term is defined by 29 U.S.C. § 210l(a)(2).

73.     The mass layoffs or plant closings at its facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of GBS's employees as well as 33% of GBS's workforce at its facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

74.     The Plaintiff and the WARN Class were terminated by GBS without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by GBS at its facilities.

75.     The Plaintiffs and WARN Class are "affected employees" of GBS, within the meaning of 29 U.S.C. § 210l(a)(5).

76.     GBS was required by the WARN Act to give the Plaintiffs and the WARN Class at least 60 days advance written notice of their terminations.

77.     GBS failed to give the Plaintiffs and WARN Class written notice that complied with the requirements of the WARN Act.

78.     The Plaintiffs are, and each of the WARN Class are, "aggrieved employees" of the GBS as that term is defined in 29 U.S.C. § 2104 (a)(7).

32

{01227427-1 }

79.     GBS failed to pay the Plaintiffs and each of the WARN Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of all other similarly situated employees, pray for judgment against Defendants, jointly and severally, as follows:

1.  The Court designate and certify this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Class to permit them to join this action by filing a written notice of consent;

2.  The Court certify Plaintiffs' claims under the Utah Payment of Wages Act and the Utah state law claims as a class action under Rule 23, appoint Plaintiffs' as adequate class representatives, and counsel of record as Class Counsel;

3.  The Court certify Plaintiffs' claims under the WARN Act as a class action under Rule 23, appoint Plaintiffs as adequate class representatives, and counsel of record as Class Counsel;

4.  A judgment against Defendants awarding Plaintiffs, the FLSA Class, and the Utah Payment of Wages Act Class all their unpaid minimum wage and overtime compensation and an additional, equal amount, as liquidated damages under the FLSA, as well as any compensation, commissions, paid time off, benefits, damages, penalties and/or interest under the Utah Payment of Wages Act;

{01227427-1 }

5. A judgment against GBS for breach of express and/or implied contract under Utah state law;

6. A judgment against Defendants for negligent misrepresentation and/or unjust enrichment;

7. A judgment against the Officers and Directors for breach of fiduciary duty and civil conspiracy;

8. An order awarding general damages and punitive damages;

9. An order awarding attorneys' fees, costs, and expenses;

10. Pre- and post-judgment interest at the highest applicable rates; and/or

11. Such other further relief as may be necessary and appropriate.

DATED:  September 22, 2017.

Respectfully Submitted,


LEWIS HANSEN PLESHE FLANDERS, LLC


/s/  Kenneth L. Reich
Kenneth L. Reich
*Attorney for Plaintiffs*

CLYDE SNOW & SESSIONS


/s/  Wayne Z. Bennett
Christopher B. Snow
Wayne Z. Bennett
*Attorneys for Plaintiffs*

{01227427-1 }