Wayne Bennett (#8521)
Christopher B. Snow (#8858)
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
wzb@clydesnow.com
cbs@clydesnow.com

Kenneth L. Reich
**LEWIS HANSEN**
Eight East Broadway, #410
Salt Lake City, Utah 84111
klr@lewishansen.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HARTMAN, AMY GOODRIDGE, and CHASE DAVIS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GREAT BASIN SCIENTIFIC, INC.; DAVID SPAFFORD, an individual; RYAN ASHTON, an individual; JEFFREY RONA, an individual; SANDRA NIELSON, an individual; KIRK CALHOUN, an individual; RONALD LABRUM, an individual; SAM CHAWLA, an individual, <br><br> Defendants. | Case No. 2:17-cv-01067-BCW <br><br> **JOINT-MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** <br><br> Magistrate Judge Brooke C. Wells |

{01524737-1 }

## RELIEF REQUESTED

Plaintiffs Elizabeth Hartman, Amy Goodridge, and Chase Davis ("Plaintiffs") and Defendants David Spafford, Ryan Aston, Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum, and Sam Chawla (the "Settling Defendants") (collectively, the "Parties") by and through their undersigned counsel, respectfully and jointly move the Court for an Order: (1) preliminarily approving the proposed settlement ("Settlement"); (2) conditionally certifying the Settlement Class; (3) approving the "Notice of Class Action Settlement," form, the "Claim Form for Individual Settlement Payment," and the "Request for Exclusion from Settlement and Exclusion from Individual Settlement Payment" form; and (4) setting a date for a fairness hearing.  A copy of the Proposed Settlement Agreement ("Settlement Agreement"), including the proposed forms, is attached hereto as <u>Exhibit A</u>.[1]

Although no party abandons any position taken in the litigation, the parties believe that continued litigation with respect to the issues resolved by the Settlement Agreement would be protracted, expensive, uncertain, and contrary to their best interests.  Thus, the Parties believe that the proposed settlement is in the best interests of all parties, and is a fair and appropriate resolution of the issues settled.

## INTRODUCTION

After significant negotiations between experienced counsel, the Parties have agreed to settle this matter.  As detailed below, the Parties' Settlement Agreement provides that each member of the Settlement Class shall release his or her claims against the Settling Defendants in

---

[1] The proposed forms have a few blank spaces for dates to be filled in following the court's ruling on this motion, and a few blank spaces for information regarding the proposed class action administrator, Simpluris.  All of that information will be filled in before mailing to the settlement class and following the court's order on this motion.

2

exchange for a pro rata portion of $2,215,000.00. The Settlement is fair, reasonable and adequate, and certainly falls within the scope of approval. It also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Thus, the Court should certify the Settlement Class and grant preliminary approval of the Settlement.

To grant preliminary approval, the Court need only determine that the settlement is sufficiently fair, reasonable, and adequate to fall within the range of possible approval. The proposed Settlement Agreement meets this standard. It was reached after extensive negotiations between the Parties, informal discovery and exchange of documents, and two separate mediations. Moreover, the monetary relief provides the Settlement Class with a significant benefit. Accordingly, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties respectfully seek entry of the accompanying Preliminary Approval Order submitted herewith.

## FACTUAL BACKGROUND

### I.     Procedural History

On September 22, 2017, Plaintiffs filed a class and collective action titled *Hartman v. Great Basin Scientific, Inc., et al.* in the United States District Court for the District of Utah, Case No. 2:17-cv-01067-ELF (the "Litigation") against their former employer, Great Basin Scientific, Inc. ("Great Basin"), as well as against the Settling Defendants, who are Great Basin's officers and directors. The Litigation alleges that from approximately March 2017 through August 2017, Great Basin was either late in paying and/or failed to pay its employees. As a result, the Litigation asserts various claims against Great Basin and the Settling Defendants, including claims for (1) failure to pay minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA"); (2) failure to pay overtime in violation of the FLSA;

{01524737-1 }

(3) violation of the Utah Payment of Wages Act, U.C.A. § 32-28-1, *et seq.*, (the "UPWA"); (4) breach of express contract; (5) breach of implied contract; (6) negligent misrepresentation; (7) unjust enrichment; (8) breach of fiduciary duty; (9) civil conspiracy; and (10) violation of the Federal WARN Act.

Thereafter, on March 5, 2018, Great Basin filed for bankruptcy in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), Case No. 18-21367 (the "Bankruptcy Action"). Plaintiffs accordingly filed a motion for relief from the automatic stay to enable them to proceed with the Litigation against the Settling Defendants. The Bankruptcy Court granted Plaintiffs' motion on or about May 24, 2018. In the order, the Bankruptcy Court specifically authorized Plaintiffs to negotiate and prosecute their claims in the Litigation against the Settleing Defendants to recover from them and/or certain insurance policies. The Bankruptcy Court also explicitly authorized Plaintiffs to obtain approval of any settlement agreement entered in connection with the Litigation. Finally, the Bankruptcy Court's order required any funds received by Plaintiffs as a result of pursuing their claims against the Settling Defendants to first be applied to any portion of the Employment Creditors' claims against the bankruptcy estate that would have administrative priority under 11 U.S.C. § 507(a)(4).

## II.    **<u>Discovery</u>**

During the Litigation, the Parties prepared and exchanged Initial Disclosures under Rule 26 of the Federal Rules of Civil Procedure and have information sufficient to assess the potential damages, the bankruptcy proceedings, and the availability of any assets or potential coverage through policies that were issued by Defendants' Insurers. The Parties also engaged in extensive informal discovery and exchanges of information through the mediation process, as explained

below.

**III.    Settlement Negotiations**

After Plaintiffs obtained the foregoing relief from the automatic stay, the Parties prepared for and participated in a mediation in October of 2018 in San Diego, California, before mediator Scott Markus.  The Parties specifically traveled to San Diego to mediate before Mr. Markus because Mr. Markus is a highly experienced and highly regarded mediator knowledgeable in wage and hour laws, such as those asserted in the Litigation.  In addition to participating in the mediation, counsel for the Settling Defendants ("Defense Counsel") and Plaintiffs' counsel ("Class Counsel") each participated in several private telephone caucuses with Mr. Markus. However, despite their significant efforts to resolve the Litigation, the matter did not settle.

Nevertheless, the Parties once again prepared for and attended a second mediation on January 31, 2019 in New York, New York.  This mediation once again involved robust discussions of risks and rewards of continued litigation.  Defense Counsel and Class Counsel exchanged numerous offers and counter-offers, and discussed both economic and non-economic terms of a global resolution.  After several hours of active negotiations, the Parties agreed to settle the Litigation, and entered into a Memorandum of Understanding (the "MOU") memorializing their agreement.  Based on the MOU, the Parties agreed to the terms of the Settlement Agreement, summarized below.

**IV.    Terms of the Settlement**

**A.    Certification of Settlement Classes**

For purposes of settlement only, the Parties have agreed to stipulate to certification of a Settlement Class under Fed. Civ. P. 23 and 29 U.S.C. Section 216(b) consisting of all hourly,

{01524737-1 }

salaried, or commissioned employees employed by Great Basin at any time between March 2, 2017 and December 31, 2017, other than the Settling Defendants, who failed to receive all wages due and owing or received late payment of any wages, including any minimum wage, overtime payments, liquidated damages, or late payment penalties ("Class Members"), and who do not file a timely and valid Request for Exclusion form.

### B.      Notice to Class Members

Pursuant to the Settlement Agreement, the Parties have agreed to request appointment of Simpluris, Inc. as Settlement Administrator, with Settlement Administration costs not to exceed $10,000.  Within 10 days after entry of the Court's Preliminary Approval Order, the Parties agree to provide the Class Members' contact information to the Settlement Administrator.  The Settlement Administrator shall then provide notice of the Settlement to the Class Members by sending them the Notice of Class Action Settlement, Claim Form, and Request for Exclusion to Class Members forms within 30 calendar days after entry of the Court's Preliminary Approval Order.  Any notices that are returned as undeliverable shall be sent within five calendar days via First Class U.S. Mail to the forwarding address.  If there is no forwarding address provided, the Settlement Administrator shall attempt to determine the correct address using a computer-based skip-trace search and shall then perform a single re-mailing via First Class U.S. Mail within five calendar days.

### C.      Class Members' Option to Respond

Class Members shall have 30 calendar days after the postmark date of the initial mailing of the Notice of Class Action Settlement and the Claim Form to exercise any rights regarding the Settlement, including the right to opt out of the Settlement.  The Parties have agreed to execute a

{01524737-1 }

Supplemental Agreement providing the Settling Defendants the option to terminate the Settlement in the event that Class Members who seek to opt-out or otherwise exclude themselves exceed a particular Opt-out Threshold.

### D.    Class Members' Ability to Object

Once the Settlement Class is certified by the Court, Class Members who do not opt out of the Settlement shall be entitled to object to the terms of the Settlement using the procedures set forth in the Notice of Class Action Settlement.  Class Members who submit a timely objection must be available for deposition within 75 miles of the Court's address, or else be deemed to have waived their objections.  Class Members who timely submit an objection shall have the right to appear at the Fairness Hearing so long as they intend to do so at the time they submit their written objection.  Class Members may withdraw their objections at any time.

### E.    Distribution of Settlement Proceeds

The Parties agree that the Settling Defendants will pay up to a maximum potential Settlement Amount of $2,215,000 (the "MPSA"), which is inclusive of attorneys' fees and costs, Class Representative Incentive Payments, Statutory Penalties, Individual Settlement Payments, employee and employer share of payroll taxes, and other payroll deductions and settlement administration costs.  After the MPSA is reduced by court-approved attorneys' fees and costs, administrative costs, court-approved class representative incentive payments, and payroll taxes, the resulting amount (the "Net Settlement Amount") shall be distributed on a claims-made basis to Class Members who submit a timely and valid Claim Form, and who do not submit a timely Request for Exclusion to opt out of the Settlement.  The Settling Defendants shall retain any portion of the Settlement Amount that is not distributed due to the failure to receive timely and

valid Claim Forms.  The Parties agree that the Net Settlement Amount shall be distributed pursuant to the following formulas:

<u>Collective Action Payment:</u>  Class Members who did not receive their wages at their payroll period between March 2, 2107 and December 31, 2017, and who may be potential collective action claimants for any claims relating to the late or non-payment of wages, including any claims that were or could have been brought in the Action, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., who opt in to participate in this settlement, shall receive 20% of the Net Settlement Amount, with each individual Class Member assigned a pro rata share according to the greater of (a) the amount stated for each individual Class Member on the Schedule E/F (ECF No. 13) filed by Great Basin on April 12, 2018 in the Bankruptcy Action, or (b) the proof of claim filed by the Class Member in the Bankruptcy Court as of January 15, 2019, divided by $2,504,100.48, whichever amount is greater.  Any amount that is not claimed shall not be paid by and/or revert to the Settling Defendants and/or their insurers, as appropriate.

<u>Class Action Payment</u>:  Class Members who did not receive their wages at their payroll period between March 2, 2017 and December 31, 2017, and who may be potential Class Members for any claims relating to the late or non-payment of wages, including any claims that were or could have been brought in the Action, under Utah or other applicable law, and who do not object or opt out of the settlement shall receive 80% of the Net Settlement Amount, with each individual Class Member assigned a pro rata share according to the greater of (a) the amount stated for each individual Class Member on the Schedule E/F (ECF No. 13) filed by Great Basin on April 12, 2018 in the Bankruptcy Action, or (b) the proof of claim filed by the Class Member in the Bankruptcy Court as of January 15, 2019, divided by $2,504,100.48, whichever amount is greater.

8

Any amount that is not claimed shall not be paid by and/or revert to the Settling Defendants and/or their, as appropriate.

      **F.**      **Timing of Individual Settlement Payment**

The Settlement Administrator shall issue two checks constituting the Individual Settlement Payments (the collective action payment and the class action payment) no later than 30 calendar days after the Effective Date of the Settlement Agreement. Each Class Member's Individual Settlement Payments will be characterized as 75% Form 1099 income and 25% W-2 income, to reflect that 75% of the payment will account for interest and penalties under the Utah Payment of Wages Act and the FLSA, while 25% will account for unpaid wages. In accordance with applicable tax laws, required tax withholdings and payroll deductions will be taken from each Individual Settlement Payment for the portion allocated to Form W-2 income and remitted to the appropriate taxing authorities. The employer's share of payroll taxes shall be paid out of the Net Settlement Amount. The Settlement Administrator shall issue any necessary IRS Form 1099 and Form W-2 statements to Class Members for their respective Individual Settlement Payments. Class Members shall be solely and legally responsible for paying all other applicable taxes on their respective Individual Settlement Payments and shall indemnify and hold harmless the Settling Defendants from any claim or liability for taxes, penalties, or interest arising as a result of the payments.

      **G.**      **Release by Settlement Class Members**

By operation of the entry of the Final Approval Order and judgment, and except as to such rights or claims as may be created by the Settlement Agreement, each Settlement Class Member, including the Class Representatives, and each of their respective executors, administrators,

{01524737-1 }

representatives, agents, heirs, successors, assigns, trustees, spouses, or guardians, agrees to release

the Settling Defendants, their Insurers, and their current or former subsidiaries, parents, affiliates,

predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors,

employers, attorneys, personal representatives, executors, and shareholders, including their

pension, profit sharing, savings, health, and other employee benefits plans of any nature, the

successors of such plans, and those plans' respective current or former trustees and

administrators, agents, employees and fiduciaries (but NOT Defendant Great Basin Scientific,

Inc.) from any and all claims, rights, demands, charges, complaints, causes of action, obligations,

or liability of any and every kind that were or could have been asserted in any version of the

Complaint filed in the Litigation or are based on or arise out of the facts alleged in any version of

the Complaint filed in Litigation.

### H.    Attorneys' Fees and Costs

Class Counsel intends to request—and the Settling Defendants agree not to oppose—that

the Court approve an attorneys' fees and costs award for (a) attorneys' fees in an amount up to

33.33% of the Maximum Settlement Amount ($738,259.50) and (b) costs in the amount of up to

$50,000.  Class Counsel will include the fee request in the Motion for Final Approval.

### I.    Class Representative Incentive Payment

Class Counsel intends to request—and the Settling Defendants agree not to oppose—that

the Court approve (i) a Class Representative Incentive Payment up to $25,000 to Plaintiff

Elizabeth Hartman, (ii) a Class Representative Incentive Payment up to $5,000 to Amy

Goodridge, and (iii) a Class Representative Payment up to $5,000 to Chase Davis for their

additional participation in the Action.  Class Counsel will include the incentive payment request

in the Motion for Final Approval.

ARGUMENT

## I.    <u>Legal Framework for Class Action and Collective Action Settlements</u>

Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") provides that settlement of class action claims is subject to the Court's approval. FLSA collective action claims also require approval of the Department of Labor or a federal district court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Public policy favors the settlement of class action lawsuits. *Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.,* No. 14-2378, 2015 U.S. Dist. LEXIS 97362 at *5 (D. Kan. July 27, 2015).

In approving a class action or collective action settlement, a reviewing court's evaluation is conducted in two stages. *Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 666 (D. Colo. 2015). At the first stage, "the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms." *Pliego v. Los Arcos Mexican Rests., Inc.,* 313 F.R.D. 117, 128 (D. Colo. 2016). In so doing, the Court's object is "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." *Id.* After the Court preliminarily approves of the settlement, notice of the settlement is sent to class members. *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review"). The second step involves a final fairness hearing. During this hearing, "class objectors (if any) may provide testimony, and the Court again decides whether the settlement is fair, reasonable, and adequate in light of all the circumstances." *Pliego v. Los Arcos Mexican Rests., Inc.,* 313 F.R.D. 117, 128 (D. Colo. 2016).

11

In reviewing a class action settlement, a court undertakes two fundamental inquiries. First, the court determines whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Harper v. C.R. Eng., Inc*., 746 F. App'x 712, 722 (10th Cir. 2018) (recognizing that class action settlements "'are premised upon the validity of the underlying class certification'"); *McNeely v. Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741 at *4-5 (W.D. Okla. Oct. 27, 2008) (unpub.) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). Second, the court addresses the overall fairness of the proposed settlement. *Id.* Similarly, to approve of a collective action settlement, the court determines whether the settlement constitutes "'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Campbell v. C.R. Eng., Inc.,* No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *7 (D. Utah Sep. 30, 2015) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

## II.  The Settlement Satisfies the Requirements of Rule 23

### A.  Rule 23(a)'s Requirements Are Met

#### 1.  The Class Is So Numerous That Joinder of All Members is Impracticable

Rule 23(a) first requires that a class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Tenth Circuit are allowed "wide latitude" in making this determination. *Trevizio v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). In showing numerosity, the parties are not required to prove the identity of each class member or the specific number of class members. *Stambaugh v. Kan. Dept. of Corr.*, 151 F.R.D. 664, 673 (D. Kan. 1993). However, classes consisting of over 100 members have been held to satisfy the numerosity requirement. *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624

(5th Cir. 1999) ("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement"); *Cooper v. Noble Casing, Inc.*, No. 15-cv-1907-WJM-CBS, 2016 U.S. Dist. LEXIS 152636, at *5 (D. Colo. Nov. 3, 2016). Here, there is no dispute that the numerosity requirement is met, as the Class Members in this case consist of approximately 131 former Great Basin employees. Thus, Rule 23(a)'s first requirement is satisfied.

2.    Questions of Law or Fact Are Common to the Class

Under Rule 23(a)(2), questions of law or fact must be common to the putative class. However, the parties do not need to demonstrate that all questions of law and fact are common. Instead, "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999). Indeed, "[a] finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010). Here, the proposed Settlement Class shares multiple common legal questions, such as whether the Settling Defendants delayed and missed payrolls and failed to compensate Class Members for hours worked and wages and commissions earned as employees of Great Basin, and whether the Settling Defendants negligently induced Class Members to work without pay or compensation. Therefore, for purposes of resolving this mater on a class-wide basis, commonality exists.

3.    The Claims of the Class Representatives Are Typical of the Class

Under Rule 23(a)(3), the named class representative is required to have claims which are "typical of the claims…of the class." The purpose of the typicality requirement is to ensure that the interests of the named class representatives align with the interest of the class. *McNeely,*

2008 U.S. Dist. LEXIS 86741 at *17 (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).  The named class representative need not be "identically situated" with all other class members.  *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  For example, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist."  *Id.*  Here, the named plaintiffs have each asserted claims arising out of the same type of factual and legal circumstances surrounding the claims of each class member.  In particular, the named plaintiffs, like the Class Members, contend that the Settling Defendants failed to compensate them for their earned wages and commissions, and caused them, through negligent representations, to work for free and without compensation and agreed upon earned wages and commissions.  Thus, for purposes of settlement, Rule 23's typicality requirement is satisfied.

4.      The Class Representatives Will Adequately Protect the Class Interests

Rule 23(a) finally authorizes a class action where that "the representative parties will fairly and adequately protect the interests of the class."  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Rutter v. Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Here, there are no perceived conflicts of interest between the named plaintiffs, the class members, or Class Counsel.  Indeed, Class Counsel has significant class action experience, and is in a position to adequately represent the proposed class.  *See Zapata v. IBP, Inc.,* 167 F.R.D. 147, 161 (D. Kan. 1996) (in the absence of contrary proof, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class).  Accordingly, Rule 23(a)'s adequacy requirement is met.

{01524737-1 }

**B.      The Settlement Class Satisfies Rule 23(b)(3)**

In addition to satisfying the requirements of Rule 23(a), the proposed class "must also meet the requirements of one of the types of classes described in subsection (b) of Rule 23." *DG v. Devaughn*, 594 F.3d at 1199.  Rule 23(b)(3) authorizes class actions where "question of law or fact common to class members predominate over any questions affecting only individual members" and where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Such class actions are "predominantly concerned with the vindication of individuals with potentially small recoveries who have little incentive to prosecute an action…[they aggregate] small claims into something of value providing incentive to pursue the claims." *Emig v. American Tobacco Co., Inc.*, 84 F.R.D. 379, 388 (D. Kan. 1998).  Here, as discussed below, the proposed settlement class shares predominating questions of law and fact, and class action treatment is the superior method for resolving the Parties' dispute. Accordingly, Rule 23(b)(3) is satisfied.

1.      <u>Common Questions of Law and Fact Predominate</u>

The predominance analysis under Rule 23(b)(3) ultimately asks "whether the class is a 'sufficiently cohesive' unit; all factual or legal issues that are common to the class inform the analysis." *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 686 (D.N.M. 2011).  While the commonality requirement asks if a single factual or legal question is common to the class, "[t]he predominance requirement [asks] if this common question is at the heart of the litigation." *Id.* (citing *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)). A plaintiff meets the predominance requirement where it shows that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a

whole…predominate over those issues that are subject only to individualized proof." *Banks v. Cent. Refrigerated Servs.,* No. 2:16-CV-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *29 (D. Utah May 2, 2017). Variation in damages among class members does not render certification inappropriate. *Ditty v. Check Rite*, 182 F.R.D. 639, 644 (D. Utah 1998). Instead, the predominance question looks at "the defendant's conduct and not on the conduct of the individual class members." *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 657 (D. Utah 2010) (internal citations omitted).

Here, the Parties agree that, for settlement purposes, the central inquiries in this case are whether the Settling Defendants delayed and missed payrolls and failed to compensate Class Members for hours worked and wages and commissions earned, and whether the Settling Defendants negligently induced Class Members to work without pay or compensation. These common questions undoubtedly predominate over any individual issues that may exist. Indeed, the crux of this action concerns whether the Settling Defendants engaged in a systematic failure to properly pay employees under applicable wage and hour laws. Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

>    2.    A Class Action is Superior to Other Methods for Resolving this Dispute

Rule 23(b)(3) secondly asks whether treatment of the matter on a class action basis is superior to "ordinary one-on-one litigation." *CGC Holdings Co., LLC v. Braod & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

{01524737-1 }

Ultimately, the superiority analysis "looks to ensure the litigation is carried out as efficiently and fairly as possible for all parties." *Miller v. Basic Research, LLC*, 285 F.R.D. at 657.

Here, class-treatment is undoubtedly the most efficient and fair method for adjudicating this dispute. Absent a class action, the cost of pursuing one-on-one litigation would far exceed the potential recovery for individual class members. By instead resolving this matter on a class-wide basis, individual members will be able to efficiently obtain individual settlement payments in release of their identical claims. Indeed, the key issues in this case do not differ from class member to class member. Accordingly, resolving this dispute on a class-wide basis is superior to alternative methods. Rule 23(b)(3) is satisfied.

## III.    The Settlement Is Fair and Reasonable

In addition to the fact that the proposed settlement satisfies the requirements of Rule 23, it also constitutes a proper class and collective action settlement because it is fair, reasonable, and adequate under the circumstances. This is especially true in this case where the $2,215,000.00 MPSA represents a recovery of nearly 90% of the Settlement Class's alleged lost wages, and where the employer filed Bankruptcy. In making the fairness assessment, courts in the Tenth Circuit consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In this case, each of these factors weighs in favor of Court approval of the settlement.

17

First, the settlement was fairly and honestly negotiated.  As noted above, it was not until after the Parties exchanged discovery and participated in two separate mediations in two states that the settlement was reached.  Before attending each mediation, the Parties separately briefed the issues and explained the strengths of their respective cases.  They were each able to assess, and did in fact assess, the costs and benefits of entering into the proposed Settlement Agreement. Accordingly, the facts show that the proposed settlement was fairly and honestly negotiated. Approval of the settlement is warranted.

Second, the settlement concerns serious questions of law and fact which place the ultimate outcome of the litigation in doubt.  In the Litigation, the Plaintiffs have alleged that the Settling Defendants illegally delayed and/or failed to compensate Plaintiffs for hours worked, and induced them to continue working without compensation through negligent misrepresentations and breaches of fiduciary duties.  The Settling Defendants adamantly contest these allegations, and deny that their liability, if any, is of the full extent suggested by Plaintiffs. For example, Plaintiffs allege damages for commissions confirmed by Great Basin's Board of Directors.  However, Plaintiffs cannot recover amounts due under a contract with a corporation against its individual employees.  *See Reedeker v.* Salisbury, 952 P.2d 577, 582 (Utah App. 1998) ("a contract between a member and a corporation is not a contract between a member and those individuals who direct or manage the corporation").  Additionally, the Settling Defendants maintain that Plaintiffs cannot recover general tort damages on top of damages for the alleged wage and hour violations, as such would constitute an impermissible double recovery.  *See Bolick v. Brevard County Sheriff's Dep't*, 937 F.Supp. 1560, 1566 (M.D. Fla. 1996) ("punitive and emotional damages are not available under the FLSA"); *Bonham v. Wolf Creek Acad.,* 767

18

F.Supp.2d 558, 567 (W.D.N.C. 2010) (dismissing the plaintiff's breach of fiduciary duty and constructive fraud claims on the basis that they were dependent on and duplicative of plaintiff's FLSA claim).  In light of the foregoing, this case clearly involves unsettled questions of law and fact which place the ultimate outcome of the Litigation in doubt.  Preliminary approval of the settlement is appropriate.

Third, there can be no doubt that this Litigation is complex and has the potential to be expensive and protracted.  To date, both Parties have expended tremendous resources in support of their respective positions.  Without a settlement, the Parties will be forced to incur thousands of additional dollars briefing the issue of decertification, proceeding forward with discovery, preparing summary judgment motions, engaging in trial preparation, including motions in limine, and putting on a trial on liability and on damages, plus appeals.  The complexity, expense, and duration of the Litigation weigh in favor of the Court finding that the proposed settlement before it is fair and reasonable.

Finally, the Parties' agreement that the settlement is fair and reasonable supports the Court granting preliminary approval.  Indeed, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight."  *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006); *see also Marcus v. Kansas Dept. of Revenue*, 208 F.Supp.2d 1179, 1183 (D. Kan. 2002).  Here, Class Counsel and Defense Counsel have arrived at an arms' length negotiated settlement which provides benefits to both Parties.  Additionally, persons not originally parties to the action will receive substantial benefits.  Under these circumstances, the settlement is fair and reasonable, and should be approved.

{01524737-1 }

**CONCLUSION**

Based on the foregoing arguments and authorities, the Parties respectfully request that the Court enter the attached proposed order granting preliminary approval of the class action Settlement.

Respectfully submitted this 10th day of June, 2019

/s/ Kenneth L. Reich
Kenneth L. Reich
LEWIS HANSEN PLESHE FLANDERS, LLC
8 E. Broadway, Suite 410
Salt Lake City, UT 84111
Telephone: (801) 746-6300
Email: klr@lewishansen.com

/s/ Christopher B. Snow
Wayne Z. Bennett
Christopher B. Snow
CLYDE SNOW & SESSIONS
201 South Main Street, 13th Floor
Salt Lake City, UT 84111
Tel: (801) 322-2516
Email: wzb@clydesnow.com
Email: cbs@clydesnow.com

*Attorneys for Plaintiffs Elizabeth Hartman, Amy Goodridge, and Chase Davis*

/s/ Conrad S. Kee
Conrad S. Kee USB# 14916
M. Christopher Moon USB# 14880
JACKSON LEWIS PLLC
215 S. State Street, Suite 760
Salt Lake City, Utah 84111
Telephone: (801) 736-3199
Email: keec@jacksonlewis.com
Email: chris.moon@jacksonlewis.com

*Attorneys for Defendants Great Basin Scientific, Ryan Aston, Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum, and Sam Chawla*

20

{01524737-1 }

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 10th day of June, 2019, I filed a true and correct copy of the foregoing Joint-Motion for Preliminary Approval of Settlement Agreement with the Clerk of the Court via CM/ECF, which will send an email notification to the following:

Conrad S. Kee
M. Christopher Moon
JACKSON LEWIS, PLLC
215 South State Street, Suite 760
Salt Lake City, Utah 84111
Email: keec@jacksonlewis.com
         Chris.moon@jacksonlewis.com

*Attorneys for Great Basin Scientific, Ryan Ashton,*
*Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum & Sam Chawla*

Gregory S. Moesinger
Ryan B. Frazier
KIRTON MCCONKIE
PO BOX 45120
Salt Lake City, Utah 84145-0120
Email: gmoesinger@kmclaw.com
         rfrazier@kmclaw.com

*Attorneys for David Spafford*

                                        /s/ *Christopher B. Snow*
                                        For Clyde Snow & Sessions, P.C.

{01524737-1 }