Wayne Bennett (#8521)
Christopher B. Snow (#8858)
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
wzb@clydesnow.com
cbs@clydesnow.com

Kenneth L. Reich (#8478)
**LEWIS HANSEN**
Eight East Broadway, #410
Salt Lake City, Utah 84111
klr@lewishansen.com

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| ELIZABETH HARTMAN, AMY GOODRIDGE, and CHASE DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREAT BASIN SCIENTIFIC, INC.; DAVID SPAFFORD, an individual; RYAN ASHTON, an individual; JEFFREY RONA, an individual; SANDRA NIELSON, an individual; KIRK CALHOUN, an individual; RONALD LABRUM, an individual; SAM CHAWLA, an individual,<br><br>Defendants. | Case No. 2:17-cv-01067-TC<br><br>**JOINT-MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENTS**<br><br>Judge Tena Campbell |

{01567884-1 }

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

    I.      Procedural History ................................................................................ 2
    II.     Discovery ............................................................................................. 3
    III.    Settlement Negotiations ....................................................................... 3
    IV.    Terms of the Settlement ....................................................................... 4
            A.  Certification ................................................................................... 4
            B.  Settlement Payments and Calculations ......................................... 4
            C.  Timing of Individual Settlement Payment ..................................... 6
            D.  Release by Settlement Class Members ........................................... 6
    V.     Notice Process ..................................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.      Legal Framework for Class Action and Collective Action Settlements..................7
    II.     The Settlement Satisfies the Requirements of Rule 23 ........................ 8
            A.  Rule 23(a)'s Requirements are Met ............................................... 8
                1. The Class Is So Numerous That Joinder of All Members Is
                   Impracticable...........................................................................8
                 2. Questions of Law or Fact Are Commons to the Class......................9
                 3. The Claims of the Class Representatives Are Typical of the Class.........9
                 4. The Class Representatives Will Adequately Protect the Class Interests..10

            B.  The Settlement Class Satisfies Rule 23(b)(3) ..................................... 10

    III.    The Settlement is Fair and Reasonable ................................................ 12
    IV.    The Requested Attorneys' Fees, Costs, Incentive Payments and Administration Costs
         Are Fair, Reasonable and Should be Awarded ..................................... 14
                 1. The Requested Attorneys' Fees are Fair and Reasonable and Should be
                   Awarded...............................................................................15
                 2. The Expenses Incurred in Prosecuting this Action are Reasonable and
                   Should be Awarded...............................................................20
                 3. The Incentive Payments are Fair and Reasonable and Should be
                   Awarded...............................................................................21
                 4. The Class Administrator's Costs are Reasonable and Should be
                   Awarded...............................................................................21

CONCLUSION.................................................................................................... 22

{01567884-1 }

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 11

*Anderson v. Merit Energy Co.*,
   2009 WL 3378526 (D. Colo. Oct. 20, 2009) ..................................................... 16

*Bolick v. Brevard County Sheriff's Dep't*,
   937 F.Supp. 1560 (M.D. Fla. 1996) ................................................................... 13

*Bonham v. Wolf Creek Acad.*,
   767 F.Supp.2d 558 (W.D.N.C. 2010) ................................................................. 13

*CGC Holdings Co., LLC v. Braod & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) .......................................................................... 11

*Cimarron Pipeline Construction, Inc. v. National Council on Compensation*,
   1993 WL 355466 (W.D. Okla. June 8, 1993) .................................................... 16

*DG v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ............................................................................ 9

*Emig v. American Tobacco Co., Inc.*,
   84 F.R.D. 379 (D. Kan. 1998) ........................................................................... 11

*Farley v. Family Dollar Stores, Inc.*,
   No. 12-CV-00325-RM-MJW, 2014 WL 5488897 (D. Colo. Oct. 30, 2014) ........................... 19

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ........................................................................................... 19

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) .............................................................................. 16

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................ 9

*Harper v. C.R. Eng., Inc.*,
   746 F. App'x 712 (10th Cir. 2018) ....................................................................... 8

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d (D. Colo. 2009) ................................................................... 18, 19

*Johnson v. Georgia Housing Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .............................................................................. 17

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ............................................................................ 12

*Lowery v. City of Albuquerque*,
   273 F.R.D. 668 (D.N.M. 2011) .......................................................................... 11

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ........................................................................ 14

*Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*,
   2010 WL 5387559 (D. Colo. Dec. 22, 2010) .................................................... 16

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982)........................................................................ 7, 8
*Marcus v. Kansas Dept. of Revenue,*
   208 F.Supp.2d 1179 (D. Kan. 2002) ..................................................................... 14
*Miller v. Basic Research, LLC,*
   285 F.R.D. ........................................................................................................ 12
*Mullen v. Treasure Chest Casino, LLC,*
   186 F.3d 620 (5th Cir. 1999)................................................................................. 8
*Rabin v. Concord Assets Group, Inc.,*
   No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. 1991) ........................................... 18
*Ramah Navajo Chapter v. Norton,*
   250 F. Supp. 2d 1303 (D.N.M. 2002) ................................................................... 16
*Realmonte v. Reeves,*
   169 F.3d 1280 (10th Cir. 1999)............................................................................. 9
*Reedeker v. Salisbury,*
   952 P.2d 577 (Utah App. 1998) ........................................................................... 13
*Rutter v. Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002)............................................................................ 10
*Stambaugh v. Kan. Dept. of Corr.,*
   151 F.R.D. 664 (D. Kan. 1993) .............................................................................. 8
*Trevizio v. Adams,*
   455 F.3d 1155 (10th Cir. 2006)............................................................................. 8
*Uselton v. Commercial Lovelace Motor Freight, Inc.,*
   9 F.3d 849 (10th Cir. 1993).......................................................................... 16, 17
*Whittington v. Taco Bell of Am., Inc.,*
   2013 WL 6022972 (D. Colo. Nov. 13, 2013) ...................................................... 16
*Zapata v. IBP, Inc.,*
   167 F.R.D. 147 (D. Kan. 1996)............................................................................ 10

Statutes

11 U.S.C. § 507(a)(4)................................................................................................. 3
29 U.S.C. §201 ..................................................................................................... 2, 6
29 U.S.C. Section 216(b) ........................................................................................... 4
U.C.A. § 32-28-1 ...................................................................................................... 2

Rules

Fed. R. Civ. P. 23 ...................................................................................................... 4
Fed. R. Civ. P. 23(a)(1)............................................................................................. 8
Rule 23(a)........................................................................................................... 8, 10
Rule 23(a) and Rule 23(b)(3)..................................................................................... 8
Rule 23(a)(2)............................................................................................................. 9
Rule 23(a)(3)............................................................................................................. 9

{01567884-1 }

Rule 23(b)(3)....................................................................................................................... 10, 11, 12

Rule 23(e) of the Federal Rules of Civil Procedure................................................................. 7

Rule 26 of the Federal Rules of Civil Procedure .................................................................... 3

Other Authorities

*Banks v. Cent. Refrigerated Servs.,* No. 2:16-CV-356-DAK,
    2017 U.S. Dist. LEXIS 67423, at *29 (D. Utah May 2, 2017) ................................................ 14

*Cooper v. Noble Casing, Inc.,* No. 15-cv-1907-WJM-CBS,
    2016 U.S. Dist. LEXIS 152636, at *5 (D. Colo. Nov. 3, 2016).............................................. 12

*Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.,* No. 14-2378,
    2015 U.S. Dist. LEXIS 97362 at *5 (D. Kan. July 27, 2015) ................................................ 11

*McNeely v. Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M,
    2008 U.S. Dist. LEXIS 86741 at *4-5 (W.D. Okla. Oct. 27, 2008)........................................ 11

*McNeely,*
    2008 U.S. Dist. LEXIS 86741 at *17 .................................................................................... 13

*Vaszlavik v. Storage Technology Corp.,*
    2000 U.S. Dist. LEXIS 21140, at *10 (D. Colo. Mar. 9, 2000)............................................. 20

## RELIEF REQUESTED

Plaintiffs Elizabeth Hartman, Amy Goodridge, and Chase Davis ("Plaintiffs") and Defendants David Spafford, Ryan Aston, Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum, and Sam Chawla (the "Settling Defendants") (collectively, the "Parties") by and through their undersigned counsel, hereby request final approval of the Parties' Settlement Agreement which was preliminarily approved by the Court on June 27, 2019. (Dkt. 65). Specifically, the Parties move the court for a final Order: (1) granting final approval of the Settlement Agreement; (2) certifying the Settlement Class; (3) directing the class administrator to distribute the Individual Settlement Payments to class members; (4) award class counsel attorneys' fees and costs pursuant to the Settlement Agreement; (5) authorize incentive payments to the representative plaintiffs in this action; and (6) authorize payment to the class administrator for administration fees.

## INTRODUCTION

The Settlement Agreement provides for a maximum payment of $2,215,000.00. (Dkt. 63-1, Settlement Agreement at § 5.1). This amount includes all amounts Defendants may be obligated to pay under the Settlement Agreement, including payments to class members, attorneys' fees and litigation expenses for class counsel, class representative incentive payments, settlement administration expenses, and payroll taxes. (*Id.*).

Following the grant of Preliminary Approval, on June 27, 2019, the settlement administrator, Simpluris, Inc., mailed the court approved notice to 122 Class Members. (Ex. 1, *Norman Alcantara Declaration,* at ¶ 8). The period for filing opt-out forms and objections ended on August 19, 2019. **Zero objections, opt-outs or exclusions** were received by the objection deadline; and none have been received through the date of this filing. (*Id. at* ¶¶ 13-15). Further, as

1

of the date of this filing, 111 Class Members submitted a valid claim form, for a response rate of approximately 91%. (*Id. at* ¶ 10). Needless to say, class member reaction to the Settlement Agreement has been overwhelmingly positive.

The Settlement Agreement is fair, reasonable and an adequate resolution of this litigation. Accordingly, the Parties respectfully request that the Court approve the Settlement Agreement and enter an Order Granting Final Approval of Collective/Class Action Settlement and Entering Final Judgment.

## STATEMENT OF FACTS

### I.     Procedural History

On September 22, 2017, Plaintiffs filed a class and collective action titled *Hartman v. Great Basin Scientific, Inc., et al.* in the United States District Court for the District of Utah, Case No. 2:17-cv-01067-ELF (the "Litigation") against their former employer, Great Basin Scientific, Inc. ("Great Basin"), as well as against the Settling Defendants, who are Great Basin's officers and directors. The Litigation alleges that from approximately March 2017 through August 2017, Great Basin was either late in paying and/or failed to pay its employees. As a result, the Litigation asserts various claims against Great Basin and the Settling Defendants, including claims for (1) failure to pay minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA"); (2) failure to pay overtime in violation of the FLSA; (3) violation of the Utah Payment of Wages Act, U.C.A. § 32-28-1, *et seq.*, (the "UPWA"); (4) breach of express contract; (5) breach of implied contract; (6) negligent misrepresentation; (7) unjust enrichment; (8) breach of fiduciary duty; (9) civil conspiracy; and (10) violation of the Federal WARN Act. (Dkt. 2, Complaint).

Thereafter, on March 5, 2018, Great Basin filed for bankruptcy in the United States

{01567884-1 }

Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), Case No. 18-21367 (the "Bankruptcy Action").  Upon Motion from the Plaintiffs, the Bankruptcy Court specifically authorized Plaintiffs to negotiate and prosecute the Litigation against the Settling Defendants. The Bankruptcy Court's order required any funds received by Plaintiffs as a result of pursuing their claims against the Settling Defendants to first be applied to any portion of the Employment Creditors' claims against the bankruptcy estate that would have administrative priority under 11 U.S.C. § 507(a)(4).  The Bankruptcy order is incorporated into the Settlement Agreement.  (Dkt. 63-1, Settlement Agreement at § 1.22).

## II.    Discovery

During the Litigation, the Parties prepared and exchanged Initial Disclosures under Rule 26 of the Federal Rules of Civil Procedure and have information sufficient to assess the potential damages, the bankruptcy proceedings, and the availability of any assets or potential coverage through policies that were issued by Defendants' Insurers.  The Parties also engaged in extensive informal discovery and exchanges of information through the mediation process, as explained below.

## III.    Settlement Negotiations

After Plaintiffs obtained the foregoing relief from the automatic stay, the Parties prepared for and participated in a mediation in October of 2018 in San Diego, California, before mediator Scott Markus.  The Parties specifically traveled to San Diego to mediate before Mr. Markus because Mr. Markus is a highly experienced and highly regarded mediator knowledgeable in wage and hour laws, such as those asserted in the Litigation.  In addition to participating in the mediation, counsel for the Settling Defendants ("Defense Counsel") and Plaintiffs' counsel ("Class Counsel")

3

each participated in several private telephone caucuses with Mr. Markus. However, despite their significant efforts to resolve the Litigation, the matter did not settle.

Nevertheless, the Parties once again prepared for and attended a second mediation on January 31, 2019 in New York, New York. This mediation once again involved robust discussions of risks and rewards of continued litigation. Defense Counsel and Class Counsel exchanged numerous offers and counter-offers, and discussed both economic and non-economic terms of a global resolution. After several hours of active negotiations, the Parties agreed to settle the Litigation, and the Settling Defendants agreed to pay $2,215,000 to Class Members, subject to the terms of a Memorandum of Understanding (the "MOU") memorializing their agreement. Based on the MOU, the Parties agreed to the terms of the Settlement Agreement, summarized below, and preliminarily approved by this Court on June 27, 2019.

**IV.    Terms of the Settlement.**

**A.    Certification.**

The Parties agreed to stipulate to certification of a Settlement Class under Fed. R. Civ. P. 23 and 29 U.S.C. Section 216(b) consisting of all hourly, salaried, or commissioned employees employed by Great Basin at any time between March 2, 2017 and December 31, 2017, other than the Settling Defendants, who failed to receive all wages due and owing or received late payment of any wages, including any minimum wage, overtime payments, liquidated damages, or late payment penalties ("Class Members"), and who do not file a timely and valid Request for Exclusion form. Class Members totaled 122. (Ex. 1, at ¶ 6).

**B.    Settlement Payments and Calculations.**

The Parties agreed that the Settling Defendants will pay up to a maximum potential

{01567884-1 }

Settlement Amount of $2,215,000 (the "MPSA"), which is inclusive of attorneys' fees and costs, Class Representative Incentive Payments, Statutory Penalties, Individual Settlement Payments, employee and employer share of payroll taxes, and other payroll deductions and settlement administration costs. (Dkt. 63-1, Settlement Agreement at § 5.1). After the MPSA is reduced by court-approved attorneys' fees (33.33 percent of the MPSA or $738,259.50), litigation costs and expenses ($24,364.09), court-approved class representative incentive payments ($35,000), and payroll taxes ($45,189.57), the resulting amount is $1,365,926.84 and constitutes the "Net Settlement Amount." (Dkt. 63-1, Settlement Agreement at § 1.26), (Ex. 1, at ¶ 11.)

As of this date, $1,346,243.00 of the Net Settlement Amount will be disbursed to the Claimants based on the receipt of 111 out of 122 claim forms. The ***average estimated payment*** is $12,120.97, the ***lowest estimated payment*** is $515.95, and the ***highest estimated payment*** is $62,548.62. (Ex. 1, at ¶ 12.) Pursuant to the Settlement Agreement, a balance of $19,671.07 will be retained by the Settlement Defendants which represents the unclaimed funds of 11 Class Members who failed to submit valid claim forms. (Dkt. 63-1, at § 5.1.1) (Ex. 1, at ¶ 12.). Remarkably, this results in a 98.6% fund distribution to Class Members. (Ex. 1, at ¶ 12.)

As preliminarily approved by the Court, and as set forth in the Settlement Agreement, the Parties agreed on a fair method for compensating Class Members and distribution of the Net Settlement Amount. Each Class Member will receive a pro rata share of the Net Settlement Amount according to the greater of (a) the amount of unpaid wages stated for each individual Class Member on the Schedule E/F (ECF No. 13) filed by Great Basin on April 12, 2018 in the Bankruptcy Action, or (b) the proof of claim for unpaid wages filed by the Class Member in the Bankruptcy Court as of January 15, 2019, divided by $2,504,100.48. (Dkt. 63-1, at § 5.5.1). The

funds will be distributed in two separate checks to each Class Member with 20% allocated to the Collective Action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., and 80% allocated to the Class Action.  (Dkt. 63-1, at § 5.5.1).

**C.    Timing of Individual Settlement Payment.**

The Settlement Administrator shall issue two checks constituting the Individual Settlement Payments (the collective action payment and the class action payment) no later than 30 calendar days after the Effective Date of the Settlement Agreement.  Each Class Member's Individual Settlement Payments will be characterized as 75% Form 1099 income and 25% W-2 income, less required withholdings.  The employer's share of payroll taxes will be paid out of the Net Settlement Amount. (Dkt. 63-1, at § 5.7)

**D.    Release by Settlement Class Members.**

By operation of the entry of the Final Approval Order and judgment, Plaintiffs and Class Members will release the claims described in the Settlement Agreement, as approved by the Court, in exchange for their receipt of the payments and benefits described herein and except as to such rights or claims as may be created by the Settlement Agreement.  (Dkt. 63-1, at § 6)

**V.    Notice Process.**

On June 27, 2019, Simpluris received the Court-approved Notice of Class Action Settlement, Request for Exclusion and Claim Form for Individual Settlement Payments (hereafter "Notice Packet").  (Ex. 1, Declaration of Norman Alcantara).  The Notice Packet explained the terms and conditions of the settlement, advised Class Members of their right to submit a claim, request exclusion from the Settlement, object to the Settlement, do nothing, and the implications of each such action.  The Notice Packet advised Class Members of applicable deadlines and other

{01567884-1 }

events, including the Final Approval Hearing, and how Class Members could obtain additional information. (*Id*. at ¶ 5).

On July 2, 2019, Counsel for Defendant provided Simpluris with a mailing list ("Class List") containing Class Members' names, most recent mailing address and telephone numbers, social security numbers, and pertinent employment information for each Class Member during the Class Period. The Class List contained data for one hundred twenty two (122) Class Members. (*Id*. at ¶ 6). On July 19, 2019, Notice Packets were mailed to one hundred twenty two (122) Class Members with addresses contained in the Class List via First Class mail or updated via a National Change of Address Database search. A copy of the Notice Packet is attached to Alcantara's Declaration as Exhibit A. Ultimately, there were not any Notice Packets that were undeliverable. (*Id*. at ¶ 9).

As of this date, Simpluris has not received any Opt Outs or Requests for Exclusion from Class Members. Moreover, Simpluris has not received any Objections to the Settlement from Class Members, or disputes regarding the estimates of Individual Payments.

**ARGUMENT**

I.    <u>**Legal Framework for Class Action and Collective Action Settlements**</u>

Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") provides that settlement of class action claims is subject to the Court's approval. FLSA collective action claims also require approval of the Department of Labor or a federal district court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Public policy favors the settlement of class action lawsuits. *Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.,* No. 14-2378, 2015 U.S. Dist. LEXIS 97362 at *5 (D. Kan. July 27, 2015).

7

{01567884-1 }

In reviewing a class action settlement, a court undertakes two fundamental inquiries.  First, the court determines whether the lawsuit qualifies as a class action under Rule 23.  *See, e.g., Harper v. C.R. Eng., Inc.*, 746 F. App'x 712, 722 (10th Cir. 2018) (recognizing that class action settlements "'are premised upon the validity of the underlying class certification'"); *McNeely v. Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741 at *4-5 (W.D. Okla. Oct. 27, 2008) (unpub.) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).  Second, the court addresses the overall fairness of the proposed settlement. *Id.*  Similarly, to approve of a collective action settlement, the court determines whether the settlement constitutes "'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'"  *Campbell v. C.R. Eng., Inc.,* No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *7 (D. Utah Sep. 30, 2015) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

## II.    The Settlement Satisfies the Requirements of Rule 23

### A.    Rule 23(a)'s Requirements Are Met

#### 1.    The Class Is So Numerous That Joinder of All Members is Impracticable

Rule 23(a) first requires that a class be so numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts in the Tenth Circuit are allowed "wide latitude" in making this determination. *Trevizio v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  In showing numerosity, the parties are not required to prove the identity of each class member or the specific number of class members. *Stambaugh v. Kan. Dept. of Corr.*, 151 F.R.D. 664, 673 (D. Kan. 1993).  However, classes consisting of over 100 members have been held to satisfy the numerosity requirement. *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)

("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement"); *Cooper v. Noble Casing, Inc.*, No. 15-cv-1907-WJM-CBS, 2016 U.S. Dist. LEXIS 152636, at *5 (D. Colo. Nov. 3, 2016). Here, there is no dispute that the numerosity requirement is met, as the Class Members in this case consist of approximately 122 former Great Basin employees.

### 2.    Questions of Law or Fact Are Common to the Class

Under Rule 23(a)(2), questions of law or fact must be common to the putative class. "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999). Indeed, "[a] finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010). Here, the proposed Settlement Class shares multiple common legal questions, such as whether the Settling Defendants delayed and missed payrolls and failed to compensate Class Members for hours worked and wages and commissions earned as employees of Great Basin, and whether the Settling Defendants negligently induced Class Members to work without pay or compensation. Therefore, for purposes of resolving this mater on a class-wide basis, commonality exists.

### 3.    The Claims of the Class Representatives Are Typical of the Class

Under Rule 23(a)(3), the named class representative is required to have claims which are "typical of the claims…of the class." The purpose of the typicality requirement is to ensure that the interests of the named class representatives align with the interest of the class. *McNeely,* 2008 U.S. Dist. LEXIS 86741 at *17 (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). Here, the named plaintiffs have each asserted claims arising out of the same type of factual

and legal circumstances surrounding the claims of each class member.  In particular, the named

plaintiffs, like the Class Members, contend that the Settling Defendants failed to compensate them

for their earned wages and commissions, and caused them, through negligent representations, to

work for free and without compensation and agreed upon earned wages and commissions.  Thus,

for purposes of settlement, Rule 23's typicality requirement is satisfied.

4.    The Class Representatives Will Adequately Protect the Class Interests

Rule 23(a) finally authorizes a class action where that "the representative parties will fairly

and adequately protect the interests of the class."  This inquiry "serves to uncover conflicts of

interest between named parties and the class they seek to represent."  *Rutter v. Wilbanks Corp. v.

Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Here, there are no perceived conflicts of

interest between the named plaintiffs, the class members, or Class Counsel.  Indeed, Class Counsel

has significant class action experience, and is in a position to adequately represent the proposed

class.  *See Zapata v. IBP, Inc.,* 167 F.R.D. 147, 161 (D. Kan. 1996) (in the absence of contrary

proof, courts presume that class counsel is competent and sufficiently experienced to vigorously

prosecute the action on behalf of the class).  Accordingly, Rule 23(a)'s adequacy requirement is

met.

**B.    The Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) authorizes class actions where "question of law or fact common to class

members predominate over any questions affecting only individual members" and where "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Such class actions are "predominantly concerned with the vindication of individuals

with potentially small recoveries who have little incentive to prosecute an action…[they aggregate]

10

small claims into something of value providing incentive to pursue the claims." *Emig v. American Tobacco Co., Inc.*, 84 F.R.D. 379, 388 (D. Kan. 1998).

The predominance analysis under Rule 23(b)(3) ultimately asks "whether the class is a 'sufficiently cohesive' unit; all factual or legal issues that are common to the class inform the analysis." *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 686 (D.N.M. 2011). A plaintiff meets the predominance requirement where it shows that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Banks v. Cent. Refrigerated Servs.,* No. 2:16-CV-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *29 (D. Utah May 2, 2017).

The central inquiries in this case are whether the Settling Defendants delayed and missed payrolls and failed to compensate Class Members for hours worked and wages and commissions earned, and whether the Settling Defendants negligently induced Class Members to work without pay or compensation. These common questions undoubtedly predominate over any individual issues that may exist. Indeed, the crux of this action concerns whether the Settling Defendants engaged in a systematic failure to properly pay employees under applicable wage and hour laws.

Moreover, rule 23(b)(3) secondly asks whether treatment of the matter on a class action basis is superior to "ordinary one-on-one litigation." *CGC Holdings Co., LLC v. Braod & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Ultimately, the superiority analysis "looks to ensure the litigation is carried out as efficiently and fairly as possible

11

for all parties." *Miller v. Basic Research, LLC*, 285 F.R.D. at 657.

Class-treatment in this case is undoubtedly the most efficient and fair method for adjudicating this dispute. Absent a class action, the cost of pursuing one-on-one litigation would far exceed the potential recovery for individual class members. By instead resolving this matter on a class-wide basis, individual members will be able to efficiently obtain individual settlement payments in release of their identical claims. Indeed, the key issues in this case do not differ from class member to class member. Accordingly, resolving this dispute on a class-wide basis is superior to alternative methods. Rule 23(b)(3) is satisfied.

### III. The Settlement Is Fair and Reasonable.

In addition to the fact that the proposed settlement satisfies the requirements of Rule 23, it also constitutes a proper class and collective action settlement because it is fair, reasonable, and adequate under the circumstances. In making the fairness assessment, courts in the Tenth Circuit consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

First, the settlement was fairly and honestly negotiated. As noted above, it was not until after the Parties exchanged discovery and participated in two separate mediations in two states that the settlement was reached. Before attending each mediation, the Parties separately briefed the issues and explained the strengths of their respective cases. They were each able to assess, and did in fact assess, the costs and benefits of entering into the proposed Settlement Agreement.

{01567884-1 }

Accordingly, the facts show that the proposed settlement was fairly and honestly negotiated. Approval of the settlement is warranted.

Second, the settlement concerns serious questions of law and fact which place the ultimate outcome of the litigation in doubt. In the Litigation, the Plaintiffs have alleged that the Settling Defendants illegally delayed and/or failed to compensate Plaintiffs for hours worked, and induced them to continue working without compensation through negligent misrepresentations and breaches of fiduciary duties. Plaintiffs estimated the unpaid wage amount to be approximately 2.5 million dollars based Great Basin's Bankruptcy filings. The settlement of $2,215,000 represents approximately 90% of the total unpaid wages, and the distribution amount of $1,346,243 represents an approximate 60% wage recovery. (Ex. 2, Snow Decl., at ¶ 18).

The Settling Defendants adamantly contest these allegations, and deny their liability. Great Basin filed Bankruptcy attempting to discharge this liability. Moreover, Plaintiffs allege damages for commissions confirmed by Great Basin's Board of Directors. However, Defendants argued that Plaintiffs cannot recover amounts due under a contract with a corporation against its individual employees. *See Reedeker v.* Salisbury, 952 P.2d 577, 582 (Utah App. 1998) ("a contract between a member and a corporation is not a contract between a member and those individuals who direct or manage the corporation").

Additionally, the Settling Defendants maintain that Plaintiffs cannot recover general tort damages on top of damages for the alleged wage and hour violations, as such would constitute an impermissible double recovery. *See Bolick v. Brevard County Sheriff's Dep't*, 937 F.Supp. 1560, 1566 (M.D. Fla. 1996) ("punitive and emotional damages are not available under the FLSA"); *Bonham v. Wolf Creek Acad.,* 767 F.Supp.2d 558, 567 (W.D.N.C. 2010) (dismissing the plaintiff's

breach of fiduciary duty and constructive fraud claims on the basis that they were dependent on and duplicative of plaintiff's FLSA claim). In light of the foregoing, this case clearly involves unsettled questions of law and fact which place the ultimate outcome of the Litigation in doubt. Preliminary approval of the settlement is appropriate.

Third, there can be no doubt that this Litigation is complex and has the potential to be expensive and protracted. To date, both Parties have expended tremendous resources in support of their respective positions. Without a settlement, the Parties will be forced to incur thousands of additional dollars briefing the issue of decertification, proceeding forward with discovery, preparing summary judgment motions, engaging in trial preparation, including motions in limine, and putting on a trial on liability and on damages, plus appeals. The complexity, expense, and duration of the Litigation weigh in favor of the Court finding that the proposed settlement before it is fair and reasonable.

Finally, the Parties' agreement that the settlement is fair and reasonable supports the Court granting preliminary approval. Indeed, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006); *see also Marcus v. Kansas Dept. of Revenue*, 208 F.Supp.2d 1179, 1183 (D. Kan. 2002). Here, Class Counsel and Defense Counsel have arrived at an arms' length negotiated settlement which provides benefits to both Parties. Additionally, persons not originally parties to the action will receive substantial benefits. Under these circumstances, the settlement is fair and reasonable, and should be approved.

## IV.    The Requested Attorneys' Fees, Costs, Incentive Payments and Administration Costs Are Fair, Reasonable and Should be Awarded.

The Notice Packet delivered to all Class Members included a separate provision that

14

stated:

### Fees and Expenses

> When seeking Final Approval of the proposed Settlement, Class Counsel will apply to the Court for an award of attorneys' fees in an amount up to 33% of total Maximum Settlement Amount of $2,215,000, an award of costs in an amount up to $50,000, and an award of administration costs in an amount up to $10,000. Elizabeth Hartman shall apply to the Court for an enhancement of $25,000 because of her participation in the Lawsuit. Amy Goodridge and Chase Davis shall apply to the Court for enhancements of $5,000 each because of their participation in the Lawsuit. Such payments, if approved by the Court, will be deducted from the Maximum Settlement Amount before calculation of the Net Settlement Amount available for distribution to the Settlement Class Members who timely file a valid Claim Form.

(Ex. 1, Notice Packet, at IV.)  There was no objection to the Settlement Agreement by any Class Member or the specific disclosure regarding the fees and expenses related to this action.  (Ex. 1, at ¶¶ 13-15).  Accordingly, the Class Members were provided adequate notice and opportunity to respond or object to the fees and expenses in this case and as of the date of this filing, no Class Member has asserted an objection to any of the terms of the Settlement Agreement, including the terms and conditions related to fees and expenses.

>   1. The Requested Attorneys' Fees are Fair and Reasonable and Should be Awarded.

As a result of the Settlement, and as provided for in the Settlement Agreement, Class Counsel is seeking attorneys' fees in the amount of 33 1/3% ($738,259.5) of the Maximum Settlement Amount ($2,215,000.00).  (Dkt. 63-1, Settlement Agreement at § 5.2). (Ex. 2, Snow Decl., at ¶ 20).  This request is fair and reasonable under applicable law in this Circuit.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by ... the parties' agreement" upon motion by Class Counsel.  Notice of the fee award motion was appropriately provided in the

15

Notice Packet, as previously stated, with no objections.  The absence of objection is a factor to be considered by the Court.  *See Anderson v. Merit Energy Co.*, 2009 WL 3378526, at \*4 (D. Colo. Oct. 20, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.") (citations omitted); *Ramah Navajo Chapter v. Norton,* 250 F. Supp. 2d 1303, 1305 (D.N.M. 2002) (recognizing "the absence of any objections to the application for an award of attorney's fees and costs" and approving application).

In class actions where a common fund is created for settlement, the majority of courts, including the Tenth Circuit, apply a "percentage of recovery" or "percentage of the fund" approach to fee awards.  *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir. 1993).  At 33 1/3 percent of the fund, the proposed fee award in this case would be well within the range of reasonable percentage fee awards in this Circuit.  *See, e.g., Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, \*6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *See Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at \*5-\*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia*, Vaszlavik v. Storage Technology Corp*., 2000 U.S. Dist. LEXIS 21140, at \*10 (D. Colo. Mar. 9, 2000)) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National*

16

*Council on Compensation*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

In assessing the reasonableness of attorney fee awards in class actions, courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Housing Express, Inc.* 488 F.2d 714 (5th Cir. 1974). The Johnson factors include: (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the client relationship, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. "[R]arely are all of the *Johnson* factors applicable." *Uselton*, 9 F.3d at 854. The applicable *Johnson* factors are addressed generally throughout this motion and the preliminary approval motion. Class Counsel will address below a few of the factors in support of an award of the requested fee.

**Time and Labor Required.** To date, Class Counsel has expended over 1000 hours in prosecuting this case and bringing it to a successful settlement and conclusion. (Ex. 2, Snow Decl., at ¶ 25). Class Counsel's current lodestar equals $377,730.00. The requested fee amount of $738,259.50, or 33 1/3 percent of the common fund. Using the lodestar method as a cross

17

check, Class Counsel's request equates to a modest 1.95 multiplier.  Courts in this District have found such a multiplier to be reasonable in comparable cases. "[C]ounsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151 (D. Colo. 2009); *see also* Newberg*, Attorney Fee Awards,* § 14.03 at 14-5 (1987) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Rabin v. Concord Assets Group, Inc*., No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. 1991) (4.4 multiplier) ("In recent years multipliers of between 3 and 4.5 have become common.") (internal quotations and citations omitted).

This case required Class Counsel to expend significant resources and time on case development, legal research, extensive client interaction and management, many hours of document review and data analysis, pre- mediation client preparation, two out of state mediations, settlement agreement drafting, notice and approval briefing (Joint Motion for Preliminary Approval of Class Action Settlement and Notice to Class Members, Claim Form, Notice, Order for Approval), and Final Approval Briefing.

In sum, the "time and labor" factor supports the proposed fee award.

**Novelty and Difficulty of the Case and Expertise of Legal Counsel.**  Class Counsel drafted the complaint as a hybrid class action to maximize the recovery for the Class Members. This involved careful litigation strategy asserting claims under both the FLSA and Utah Payment of Wages Act, as well as contract and tort claims.  Moreover, after filing the complaint, Defendant Great Basin immediately filed for Bankruptcy, staying all litigation. Class Counsel

{01567884-1 }

asserted claims against the individual Defendants in this case and negotiated with the Bankruptcy Trustee to move the Bankruptcy Court to lift the stay so the class claims could proceed against the individuals.  In addition, complex and multiple insurance policies became relevant in this action for the recovery of the class and Class Counsel utilized their expertise to leverage those policies for the benefit of the class.

The skill requisite to perform the legal service properly also supports the award of attorneys' fees, as class action overtime cases tend to "involve a specialized area of the law which is often complex and difficult, where some degree of extra skill is needed to litigate the cases properly." *Farley v. Family Dollar Stores, Inc*., No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).

**The Amount Involved and the Results Obtained.**    The most critical Johnson factor in determining the reasonableness of a fee award is the degree of success obtained. *In re Crocs, Inc*. at *4 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  Further, where the recovery was highly contingent and efforts of counsel were instrumental in realizing recovery on behalf of the class, this factor should be given even greater weight. *In re Qwest Comm. Int., Inc. Securities Litigation*, 625 F.Supp.2d 1143, 1151 (D. Colo. 2009).

As previously discussed herein, the $2,215,000 settlement represents a significant recovery on behalf of the class.   Plaintiffs estimated the unpaid wage amount to be approximately 2.5 million dollars based Great Basin's Bankruptcy filings. The settlement of $2,215,000 represents approximately 90% of the total unpaid wages, and the distribution amount of $1,346,243 represents an approximate 60% wage recovery.  (Ex. 2, Snow Decl., at ¶ 18).   The ***average estimated payment*** is $12,120.97, the ***lowest estimated payment*** is $515.95, and the ***highest***

19

*estimated payment* is $62,548.62.  Defendant vigorously refuted the Plaintiffs' claims with myriad legal defenses, including the filing of Bankruptcy, and defenses that would have nullified coverage under the insurance policies if litigated successfully.

In obtaining the $2,215,000 settlement, Class Counsel worked extensively with Class Members to understand Defendants' compensation policies, Defendants' contractual obligations and promises regarding late payment of wages and missed payroll, and potential damages for the various categories of works within the Class.  Class Counsel developed legal theories and claims swiftly and quickly after Great Basin notified employees that the Company could no longer continue operations.  Class Counsel acted timely, communicated appropriately with the Class, and achieved an excellent result.

In sum, Class Counsel's request for 33 1/3 percent is reasonable and should be awarded in this case.

> 2.  The Expenses Incurred in Prosecuting this Action are Reasonable and Should be Awarded.

Additionally, Class Counsel agreed to cap court costs at $50,000 to limit the amount rendered counsel in favor of the Class Members.  In the course of the proceedings, Class Counsel has incurred the costs including, but not limited to: court filings, copying and management of documents, online legal research, process server fees and expenses, mediation fees, travel costs including flights and hotels, and other incidental expenses directly related to this action.  Class Counsel's collective expense totaled only $24,364.09, which is less than half the approved $50,000 limit in the Settlement Agreement.  (Ex. 2, Snow Decl., at ¶ 27).  Defendants do not oppose this request for costs.

      3.   <u>The Incentive Payments are Fair and Reasonable and Should be Awarded.</u>

The amount requested to the representative plaintiffs is fair, reasonable and warranted. Plaintiff Elizabeth Hartman will receive $25,000, and Amy Goodridge and Chase Davis will each receive $5,000.00.  Ms. Hartman met with Class Counsel in person on multiple occasions, conversed with us often over the telephone and email, and flew to New York and San Diego to represent the class during extensive mediation sessions.  (Ex. 2, Snow Decl., at ¶ 28).  Ms. Hartman's participation was an essential element of this case and her assistance was invaluable in ultimately settling this case for the benefit of all class members.  Ms. Goodridge and Mr. Davis also provided valuable input at the beginning of this case and continued to be available throughout the case for advice and counsel. *Id.*

      4.   <u>The Class Administrator's Costs are Reasonable and Should be Awarded.</u>

The Court approved Simpluris Inc., as the Class Administrator in the Preliminary Approval Order.  Norman Alcantara prepared a thorough affidavit detailing Simpluris' efforts in providing notice the class members and in calculating the settlement payments.  (Ex. 1).  The request of $6,260.00 is extremely reasonable in this case, which will cover the mailing of settlement checks and the tax reporting of such payments.

{01567884-1 }

## CONCLUSION

Based on the foregoing arguments and authorities, the Parties respectfully request that the Court enter the attached proposed order granting final approval of the class action Settlement.

Respectfully submitted this 27th day of August, 2019

/s/ Kenneth L. Reich
Kenneth L. Reich
LEWIS HANSEN PLESHE FLANDERS, LLC
8 E. Broadway, Suite 410
Salt Lake City, UT 84111
Telephone:  (801) 746-6300
Email: klr@lewishansen.com

/s/ Christopher B. Snow
Wayne Z. Bennett
Christopher B. Snow
CLYDE SNOW & SESSIONS
201 South Main Street, 13th Floor
Salt Lake City, UT 84111
Tel:  (801) 322-2516
Email: wzb@clydesnow.com
Email: cbs@clydesnow.com

*Attorneys for Plaintiffs Elizabeth Hartman, Amy Goodridge, and Chase Davis*

/s/ Conrad S. Kee
Conrad S. Kee USB# 14916
M. Christopher Moon USB# 14880
JACKSON LEWIS PLLC
215 S.  State Street, Suite 760
Salt Lake City, Utah 84111
Telephone:  (801) 736-3199
Email: keec@jacksonlewis.com
Email: chris.moon@jacksonlewis.com

*Attorneys for Defendants Great Basin Scientific, Ryan Aston, Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum, and Sam Chawla*

22

{01567884-1 }

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of August, 2019, I filed a true and correct copy of the foregoing Joint-Motion for Final Approval of Settlement Agreement with the Clerk of the Court via CM/ECF, which will send an email notification to the following:

Conrad S. Kee
M. Christopher Moon
JACKSON LEWIS, PLLC
215 South State Street, Suite 760
Salt Lake City, Utah 84111
Email: keec@jacksonlewis.com
       Chris.moon@jacksonlewis.com

*Attorneys for Great Basin Scientific, Ryan Ashton,*
*Jeffrey Rona, Sandra Nielson, Kirk Calhoun, Ronald Labrum & Sam Chawla*

Gregory S. Moesinger
Ryan B. Frazier
KIRTON MCCONKIE
PO BOX 45120
Salt Lake City, Utah 84145-0120
Email: gmoesinger@kmclaw.com
       rfrazier@kmclaw.com

*Attorneys for David Spafford*

                                        /s/ *Christopher B. Snow*
                                        For Clyde Snow & Sessions, P.C.

23

{01567884-1 }